BLUE CIRCLE CEMENT,
INC., Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS
OF the COUNTY OF ROGERS.

No. 91–C–635–H.

United States District Court,
N.D. Oklahoma.

May 12, 1995.

---

Charles W. Shipley, Jamie Taylor Boyd, Blake K. Champlin, Shipley Jennings & Champlin, Tulsa, OK, for Blue Circle Cement, Inc.

Bill Shaw, District Attorney's Office, Claremore, OK, for Rogers County Board of County Commissioners.

## *ORDER*

HOLMES, District Judge.

This matter comes before the Court for consideration on the Motion for Summary Judgment of Plaintiff Blue Circle Cement, Inc. ("Blue Circle").

This case arises from a municipality's exercise of its zoning authority to regulate hazardous waste disposal, recycling, and treatment within its borders. In its motion, Blue Circle raises constitutional challenges to the

hazardous waste zoning ordinance enacted by the Defendant, the Board of County Commissioners of Rogers County (the "Board").

On August 4, 1992, the District Court granted summary judgment *sua sponte* in favor of the Board. Blue Circle appealed the decision to the United States Court of Appeals for the Tenth Circuit. The Court of Appeals reversed the grant of summary judgment and remanded the action to the District Court for consideration of Blue Circle's federal preemption and Commerce Clause challenges to Section 3.13.2 of the Rogers County ordinance, consistent with the Tenth Circuit opinion of June 22, 1994. *Blue Circle Cement, Inc. v. Board of County Comm'rs*, 27 F.3d 1499 (10th Cir.1994) (the "Opinion"). The case was transferred to this Court on March 7, 1995.

The Tenth Circuit comprehensively outlined the background of the dispute as follows:

> Blue Circle, an Alabama corporation with its principal place of business in Georgia, operates a quarry and cement manufacturing plant in Rogers County, Oklahoma. Since opening this facility in 1960, Blue Circle has used coal and natural gas as fuel in its cement kilns. To reduce the cost of heating its kilns, Blue Circle sought to convert to Hazardous Waste Fuels ("HWFs"), which are derived from the blending of various industrial wastes and possess high British Thermal Unit ("BTU") value.[1] The Board's regulatory actions in direct response to Blue Circle's proposed fuel conversion project gave rise to this dispute.
>
> Initially, Blue Circle concluded that the Board's approval to use HWFs was unnecessary. The zoning ordinance in effect when Blue Circle commenced its fuel conversion project in the early 1980s required industrial operators to obtain a conditional use permit to establish an "industrial

waste disposal" site. *See* § 3.13.2 of the City of Claremore–Rogers County Metropolitan Planning Commission Zoning Ordinance (the "Ordinance"). Blue Circle contended that burning HWFs in its cement kilns constituted "recycling" or "burning for energy recovery," not disposal. Because the Ordinance made no mention of recycling operations, Blue Circle argued that it was free to purchase, store, and burn HWFs at its site without first obtaining a conditional use permit. To accomplish the conversion, Blue Circle incurred design, engineering, and planning expenses in preparation for the switch to HWFs. The company entered into an agreement with CemTech, Inc., contingent upon obtaining the necessary governmental approval, to construct a storage area for HWFs and to supply HWFs to its Rogers County facility.

> However, the Board disagreed with Blue Circle's interpretation of the Ordinance and informed company officials that burning HWFs in the cement kilns required a conditional use permit. On August 12, 1991, the Board adopted an advisory resolution stating that "there is no distinction between a hazardous waste alternative fuel burning facility as a recycling facility or an industrial waste disposal site or hazardous waste incinerator." The regulatory force of this advisory resolution remains uncertain, but the Board explained its action as an effort to thwart Blue Circle's attempt to circumvent the conditional use permit requirement under the original terms of § 3.13.2.

> On August 21, 1991, rather than apply for a conditional use permit to burn HWFs at its cement plant, Blue Circle filed suit in the United States District Court for the Northern District of Oklahoma, seeking a declaratory judgment under 28 U.S.C. § 2201 that the use of HWFs did not

---

1. By one estimate, at least twenty-three cement manufacturing plants in the United States and Canada operate with HWFs. Aplt.App. at 134. *See LaFarge Corp. v. Campbell*, 813 F.Supp. 501, 504 n. 5 (W.D.Tex.1993) (noting that HWFs are used in cement kilns, blast furnaces, coke ovens, sulfur recovery furnaces, and industrial boilers). Pursuant to 42 U.S.C. 6924(q)(1), Congress directed the Environmental Protection Agency ("EPA") to promulgate regulations to establish national standards for owners and operators of industrial furnaces that burn HWFs. *See* 40 C.F.R. § 266.100 Subpart H (entitled "Hazardous Waste Burned in Boilers and Industrial Furnaces").

constitute industrial "disposal." On December 2, 1991, while Blue Circle's suit was pending, the Board ended any ambiguity about the characterization of Blue Circle's use of HWFs by amending the Ordinance to include "recycling" and "treatment" sites among those facilities for which the Ordinance requires a conditional use permit. By this express language, the Board unequivocally subjected hazardous waste recycling and treatment to the same regulatory and permit scheme that was applicable to industrial waste disposal.

Opinion at 1501–02.

Summary judgment is appropriate where "there is no genuine issue as to any material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Windon Third Oil & Gas Drilling Partnership v. Federal Deposit Insurance Corp.*, 805 F.2d 342, 345 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987), and "the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c). In *Celotex*, the Supreme Court stated:

> [t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. at 2552.

A party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts, Fed.R.Civ.P. 56(e), sufficient to raise a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In *Anderson*, the Supreme Court stated:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

477 U.S. at 252, 106 S.Ct. at 2512. Thus, to defeat a summary judgment motion, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Court has two issues before it: (1) whether the Resource Conservation and Recovery Act ("RCRA") preempts the Ordinance's restrictions on hazardous waste treatment and recycling, and (2) whether the Ordinance imposes an undue burden on interstate commerce in violation of the Commerce Clause of the United States Constitution.

Section 3.13.2 of the Ordinance, as amended and retitled "Industrial Waste Disposal/Recycling/Treatment," provides in pertinent part:

> An Industrial Waste Disposal/Recycling/Treatment Site shall not be less than one hundred sixty (160) acres in size and no other industrial waste disposal/recycling/treatment site shall be nearer than one (1) mile (5,280 feet) in any direction from the proposed industrial waste disposal/recycling/treatment site. The site will be as nearly square as possible.

> All operation of actual disposal/recycling/treatment site shall be confined to as near the center of the site as practical and in no case in violation of any Oklahoma State Department of Health Rules and Regulations or in violation of any other regulatory requirements. The operator of the ... site shall own in fee both the land (surface) and the minerals.

> The operator shall file with the Planning Commission a comprehensive drainage spill protection plan which will clearly and specifically detail the permanent and emergency measures and permanent structures to be installed to protect the drainage area and all adjacent drainage areas from any contamination by industrial waste....

> All industrial waste disposal/recycling/treatment sites shall be located at least one (1) mile from any platted residential subdivision.

The first question before the Court is whether the Ordinance is preempted by the provisions of RCRA. The doctrine of

federal preemption, based on the Supremacy Clause of the United States Constitution,[2] is comprised of both express and implied forms of preemption. *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992). The Court in *Gade* explained that at least two types of implied preemption exist:

> field pre-emption, where the scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," [*Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) ] ... and conflict pre-emption, where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43 [83 S.Ct. 1210, 1217, 10 L.Ed.2d 248] (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941) (other citations omitted).

*Id.*

Because the provisions of the Ordinance are more restrictive than those of RCRA, the only type of preemption which is arguably applicable here is implied conflict preemption. Application of the RCRA "savings clause," 42 U.S.C. § 6929, empowering local governments to adopt regulations that are "more stringent" than those on the federal level, ensures that neither express nor implied field preemption bars the Ordinance. Opinion at 1504–05; *See Old Bridge Chems., Inc. v. New Jersey Dep't of Envtl. Protection,* 965 F.2d 1287, 1292 (3d Cir.) ("[A]lthough waste management may be an area of overriding national importance, in legislating in this field Congress has set only a floor, and not a ceiling, beyond which states may go in regulating the treatment, storage, and disposal of solid and hazardous wastes."), *cert. denied,* 506 U.S. 1000, 113 S.Ct. 602, 121 L.Ed.2d 538 (1992).

■ However, RCRA may preempt the Ordinance on the basis of implied conflict preemption if the Ordinance is inconsistent "with the structure and purpose of [RCRA] as a whole." *Gade,* 505 U.S. at 98, 112 S.Ct. at 2383. The Tenth Circuit outlined an "objective" three-pronged test for the Court to utilize in determining whether the Ordinance passes muster. First, under this test, "ordinances that amount to an explicit or de facto total ban of an activity that is otherwise encouraged by RCRA will ordinarily be preempted by RCRA." Opinion at 1508. Second, "an ordinance that falls short of imposing a total ban on encouraged activity will ordinarily be upheld so long as it is supported by a record establishing that it is a reasonable response to a legitimate local concern for safety or welfare." *Id.* The Tenth Circuit declared that:

> if the ordinance is not addressed to a legitimate local concern, or if it is not reasonably related to that concern, then it may be regarded as a sham and nothing more than a naked attempt to sabotage federal RCRA policy of encouraging the safe and efficient disposition of hazardous waste materials.

*Id.* Finally, before the Court may rule that the ordinance is preempted, the Court must make a finding that the "impact of the local ordinance on the objectives of the federal statute ... thwarts the federal policy in a material way." *Id.* at 1508–09.

Before applying this three-part test, the Court must consider the purpose of RCRA. The Tenth Circuit articulated RCRA's purpose as follows:

> RCRA is the comprehensive federal hazardous waste management statute governing the treatment, storage, transportation, and disposal of hazardous wastes which have adverse effects on health and the environment. Enacted in 1976, RCRA authorized a multifaceted federal regulatory, permit, and enforcement regime to address the "overriding concern of ... the effect on the population and the environment of the disposal of discarded hazardous

**2.** The Supremacy Clause mandates that "the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, § 2.

wastes—those which by virtue of their composition or longevity are harmful, toxic or lethal." H.R.Rep. 94–1491, 94th Cong., 2d Sess. at 3 (1976), *reprinted in,* 1976 U.S.C.C.A.N. 6238, 6241.

One of RCRA's stated purposes is to assist states and localities in the development of improved solid waste management techniques to facilitate resource recovery and conservation. 42 U.S.C. § 6902(a)(1). "[D]iscarded materials have value in that energy or materials can be recovered from them. In the recovery of such energy or materials, a number of environmental dangers can be avoided. Scarce land supply can be protected. The balance of trade deficit can be reduced. The nation's reliance on foreign energy and materials can be reduced...." 1976 U.S.C.C.A.N. at 6241.

The Hazardous and Solid Waste Amendments of 1984 increased RCRA's emphasis on recovery and recycling of hazardous wastes. In those amendments, Congress sought to "minimiz[e] the generation of hazardous waste and the land disposal of hazardous waste by encouraging process substitution, materials recovery, properly conducted recycling and reuse, and treatment." 42 U.S.C. § 6902(a)(6). Moreover, Congress articulated as an objective "promoting the demonstration, construction, and application of solid waste management, resource recovery, and resource conservation systems." 42 U.S.C. § 6902(a)(10). Indeed, the Conference Report for the 1984 amendments underscored Congress' goal to replace land disposal with advanced treatment, recycling, and incineration:

> [T]he Conferees intend that through vigorous implementation of the objectives of this Act, land disposal will be eliminated for many wastes and minimized for all others, and that advanced treatment, recycling, incineration and other hazardous waste control technologies should replace land disposal.

Conference Report No. 98–1133, 98th Cong., 2d Sess. at 80, *reprinted in* 1984 U.S.C.C.A.N. at 5649, 5651; *ENSCO, Inc. v. Dumas,* 807 F.2d 743, 744 (8th Cir.1986) (noting Congressional intent to encourage treatment in preference to land disposal of hazardous waste).

Opinion at 1505–06. Based upon the stated objectives of RCRA, it is clear that the burning of HWFs by Blue Circle, which qualifies as a "disposal" of "hazardous waste", is "an activity that is otherwise encouraged by RCRA".

The Court must next determine whether the Ordinance amounts to an "explicit or de facto total ban" on the burning of HWFs. An examination of the language of the Ordinance reveals that it is not an explicit total ban on the proposed Blue Circle disposal. Blue Circle, however, contends that the Ordinance effectively bans the burning of HWFs because no property located in Rogers County can meet the locational requirements of the Ordinance. Affidavit of Wayne Alberty ("Alberty Aff.") ¶¶ 3–6.

In response, the Board appears to make two arguments in its supplemental brief: first, that three tracts of property, in Rogers County, currently zoned floodplain, might meet the requirements of the Ordinance if Blue Circle were to apply for, and the Board were to grant, a zoning variance and, second, that other property within the County might meet the requirements of the Ordinance if Blue Circle were to apply for, and the Board were to grant, a conditional use permit. The Board has presented no evidence in support of its arguments, despite the Tenth Circuit's statement that the Board must develop the record on the preemption question.

In short, the arguments offered by the Board do not controvert Blue Circle's contention that no property in Rogers County can currently meet the locational requirements of the Ordinance. Presented with a similar lack of evidence, the Tenth Circuit found that:

> the Board merely rests on a hypothetical, standardless possibility that, notwithstanding the Ordinance's specific site requirements, the Board might relent and allow such activity in the future, either by rezoning flood plain land or by granting a variance. *This is not a sufficient response.* (Emphasis added).

Opinion at 1510; *see also Ogden Envtl. Servs. v. City of San Diego,* 687 F.Supp. 1436, 1446–47 (S.D.Cal.1988) (a standardless

permit scheme amounted to a *de facto* ban). The *Ogden* court stated:

> allowing a locality to completely evade judicial review simply by requiring a conditional use permit, which is then granted or denied at the discretion of local decision-makers, creates the potential for ... "sham" and "subterfuge".....

687 F.Supp. at 1446. The Court agrees with the reasoning of the Tenth Circuit and of the *Ogden* court and holds that the Ordinance effects a *de facto* ban on the burning of HWFs within that portion of Rogers County subject to the Ordinance.

■ Consistent with the test articulated by the Tenth Circuit, to conclude that the Ordinance is preempted, the Court must determine whether the impact of the Ordinance on the objectives of RCRA "thwarts the federal policy in a material way." Opinion at 1508–09. As noted by the Tenth Circuit, among RCRA's primary purposes are that:

> through vigorous implementation of the objectives of this Act, land disposal will be eliminated for many wastes and minimized for all others, and that advanced treatment, recycling, incineration and other hazardous waste control technologies should replace land disposal.

Conference Report No. 98–1133, 98th Cong., 2d Sess. at 80, *reprinted in* 1984 U.S.C.C.A.N. at 5651; *ENSCO*, 807 F.2d at 744 (noting Congressional intent to encourage treatment in preference to land disposal of hazardous waste).

Opinion at 1505–06. Clearly, the impact of the Ordinance, to ban the burning of HWFs, undermines the primary stated objectives of RCRA and thus "thwarts the federal policy in a material way." Therefore, the Court concludes that RCRA preempts the Ordinance. Because Blue Circle is entitled to judgment as a matter of law and the Board has not raised a genuine issue of material fact, the Court hereby grants Blue Circle's motion for summary judgment on the grounds that RCRA preempts the Ordinance.

■ It should be noted that, even if the Board were to prevail under the first part of the preemption analysis, the Board has not presented any evidence which demonstrates

that the Ordinance is addressed to a legitimate local concern for safety or welfare or that it is a reasonable response to such a concern.

Blue Circle has introduced evidence that, during the cement kiln combustion process, organic hazardous wastes are detoxified. Affidavit of Ronald Gebhardt ("Gebhardt Aff.") ¶ 7. In addition, Gebhardt states that:

> [o]verall air quality from the manufacturing process is improved due to the lower sulfur content of HWFs compared to coal. Society benefits because hazardous wastes are used for a beneficial purpose rather than being disposed by underground injection or landfilling or some illegal activity, and because hazardous waste management costs for the nation are reduced.

Gebhardt Aff. ¶ 8.

■ In response, the Board attempts to identify the pertinent local concern for safety or welfare in three ways. First, without any supporting evidence, the Board asserts that:

> [p]otential costs associated with burning of hazardous waste in cement kilns not originally built to burn hazardous waste include monetary physical and emotional costs of birth defects, immune system depression and associated diseases, behavioral and nervous system effects and/or effects upon non-human species that are known to accompany exposure to emissions from waste burning facilities.

Supplemental Brief of Board at 11–12. A motion for summary judgment, however, cannot be defeated by bare assertions in the brief of the party opposing the motion. *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1382 (10th Cir.1994). "[D]ocuments of this character are self-serving and are not probative evidence of the existence or nonexistence of any factual issues." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2723, at 65 (2d ed. 1983). Thus, such a conclusory assertion does not suffice as an identification of what specific safety and health hazards are presented by the burning of HWFs in Blue Circle's cement facility. *See* Opinion at 1510.

■ Second, the Board appended a portion of a law review article to its brief enti-

tled "Burning Mad: The Controversy Over Treatment of Hazardous Waste in Incinerators, Boilers and Industrial Furnaces." It is clear that the contentions of a law review article are not evidence sufficient to defeat a motion for summary judgment. "[T]he court may not take cognizance of positions regarding the facts based on exhibits that are merely a part of the brief and have not been otherwise verified or supported." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2723, at 65. Moreover, it should be noted that the article does not unequivocally support the Board's contentions. The only scientific study of cement kiln recycling referenced in the article—an 18 month study at a cement kiln in Texas—concluded that, of the 1,000 samples taken, only one exceeded Texas standards and the standard exceeded involved nuisance odors rather than health effects.

Finally, the Board offers the deposition testimony of Douglas Pardee, the Operations Manager of Blue Circle, claiming that Pardee indicates "that cement kilns currently operating through burning of HWF"s have yet to meet emission standards promulgated by the EPA." Board's Response to Blue Circle's Supplemental Brief at 5. The Court has reviewed this deposition testimony and does not believe that it supports the Board's claim. But even if it did, and even allowing the Board "significant latitude", Opinion at 1508, as the Court must, the fact that some cement kilns currently burning HWFs have not met EPA's emission standards is not sufficient to identify what specific health and safety concerns are presented by Blue Circle's proposed recycling.

Further, the Board has not adduced any evidence suggesting that the limits imposed by the Ordinance bear any reasonable relation to any legitimate, local concern. In support of Blue Circle's contention that the Ordinance is not reasonably related to a legitimate, local concern, Blue Circle states:

[t]he Ordinance was amended without any formal study (i) of the necessity or reasonableness of regulating recycling facilities under the same standards as disposal facilities, or (ii) of the impact of such regulation on recycling. Defendant's Response to Request for Admission No. 4 at 5–6.

Other activities that are more substantial and potentially harmful than recycling are allowed in I–4 zoned areas as of right without locational prohibitions. Alberty Aff. ¶¶ 8–9.

In response, the Board asserts that:

consideration of scholarly and scientific conclusion that "safe" incineration of HWF's in cement kilns has yet to be attained may reasonably result in restriction of location of such facilities.

Board's Response to Blue Circle's Supplemental Brief at 8. This conclusory statement fails for the same reason as the Board's assertion of the health hazards presented by the proposed recycling discussed above.

The Board also refers to the statements of Glenn Sweet, Kenneth Crutchfield, and Gerry Payne, County Commissioners in and for Rogers County, that the December 2, 1991 amendment to the Ordinance was "enacted to continue the purpose of the Comprehensive County-wide Zoning Plan which is intended, in part, to insure the health and safety of Rogers County Citizens." Affidavit of Glenn Sweet ¶ 3; Affidavit of Kenneth Crutchfield ¶ 3; Affidavit of Gerry Payne ¶ 3. However, rather than explaining how the limits of the Ordinance bear a reasonable relation to a local concern, the affidavits merely recite the intent of three County Commissioners in enacting the Ordinance. The Tenth Circuit flatly rejected this argument when it stated:

it seems to us that the evaluation of the local ordinance should be conducted on an objective, rather than a subjective, basis. It is, after all, very difficult to determine the bona-fides of a collective legislative body where motivation may vary among the members of that body and where, in most cases, the motivations may be complex and easily disguised. Rather, we are on firmer footing if we utilize an objective approach....

Opinion at 1508 (holding that a "good faith adaptation of federal policy to local conditions" is not the correct standard).

The Court, therefore, holds that the Ordinance effectively bans the recycling of HWFs

within the regulated area of Rogers County, the Ordinance materially conflicts with the federal policy of RCRA, the Board has not shown a legitimate health and safety interest, and the Board has not demonstrated that the criteria of the Ordinance are reasonably related to a legitimate local interest. The Ordinance is preempted by RCRA, and Blue Circle is entitled to judgment as a matter of law on its preemption claim.

■■■■ The second question facing the Court is whether the Ordinance imposes an excessive burden on interstate commerce by effectively barring the use of HWFs within Rogers County.[3] When the statute at issue discriminates on its face between local and interstate commerce, courts have erected a near *per se* rule of invalidity. *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535–36, 57 L.Ed.2d 475 (1978). The Commerce Clause also prohibits a state or local "statute [that] regulates evenhandedly to effectuate a legitimate local public interest if it imposes a burden on interstate commerce that is 'clearly excessive in relation to the putative local benefits.'" *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970); Opinion at 1511. "The extent of the burden on interstate commerce that will be tolerated will depend on the 'nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.'" *Pike*, 397 U.S. at 142, 90 S.Ct. at 847; Opinion at 1511.

The Tenth Circuit stated that:
[t]he Rogers County hazardous waste zoning ordinance operates evenhandedly because it does not distinguish between hazardous waste generated within the County and hazardous waste generated outside the county. Its site conditions apply equally, regardless of the origin of the HWFs being burned and it confers no advantages on instate entities seeking to store, treat, recycle, or dispose of HWFs as against out-of-state firms.

Opinion at 1511–12. Because the Ordinance is not facially discriminatory, the Court must apply the *Pike* balancing test to determine whether the Ordinance unduly burdens interstate commerce. The Tenth Circuit advised that this broader analysis requires the court to scrutinize:

(1) the nature of the putative local benefits advanced by the Ordinance; (2) the burden the Ordinance imposes on interstate commerce; (3) whether the burden is "clearly excessive in relation to" the local benefits; and (4) whether the local interests can be promoted as well with a lesser impact on interstate commerce.

Opinion at 1512.

■■■■ The party challenging the statute bears the burden of showing the undue imposition on interstate commerce. Opinion at 1511 (quoting *Dorrance v. McCarthy*, 957 F.2d 761, 763 (10th Cir.1992)). The Court first examines the nature of the local benefits advanced by the Ordinance. Blue Circle asserts that the actual benefit of the Ordinance is minimal at best, and cites evidence that the burning of HWFs instead of coal in its cement kilns will improve the air quality. Gebhardt Aff. ¶¶ 7–8. Blue Circle also claims that the provisions of the Ordinance do not add to the protection of health and welfare because the environmental arena is already heavily regulated by both state and federal government. *Id.* ¶¶ 9–15. In response, as stated above, the Board offers no evidence that the burning of the HWFs would present any significant health or safety hazard. For example, the Board does not attempt to explain the reasoning behind the 160 acre requirement or the restriction that the site be "as nearly square as possible" or the provision that the site operator must own both the land and the minerals. "The mere 'incantation of a purpose to promote the public health or safety does not insulate a state from Commerce Clause attack.'" Opinion at 1512 (quoting *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 670, 101 S.Ct. 1309, 1316, 67 L.Ed.2d 580 (1981) (plurality opinion)). Thus, Blue Circle prevails under the first prong of the test.

---

**3.** It is well settled that hazardous waste is an article of commerce. *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources,* 504 U.S. 353, 358–59, 112 S.Ct. 2019, 2023, 119 L.Ed.2d 139 (1992); Opinion at 1510 n. 12.

Next, the Court looks to the burden imposed by the Ordinance on interstate commerce. Blue Circle alleges, and the Court agrees, that the burden on interstate commerce is great because the strict site requirements of the Ordinance effectively prevent the flow of hazardous waste to the Blue Circle facility and to the area within Rogers County subject to the Ordinance. As discussed above, there is nothing in the record that controverts this allegation. Blue Circle prevails on this point as well.

Third, the Court weighs whether the burden imposed is "clearly excessive in relation to" the local benefits. Because the Ordinance imposes a grave burden on interstate commerce and no specific safety and health benefits have been identified by the Board, in weighing the two interests, the Court finds that the burden imposed by the Ordinance is "clearly excessive in relation to" the local benefits.

Finally, the Court analyzes whether the benefits could be achieved as well by less intrusive measures. Blue Circle has presented evidence that the restrictions of the Ordinance are "irrational, overbroad, unreasonable and unnecessary with respect to the regulation of recycling activities." Gebhardt Aff. ¶¶ 15–18; Alberty Aff. ¶¶ 8–10. There is no evidence in the record which controverts these contentions.

The Court, thus, holds that the Ordinance imposes an undue burden on interstate commerce, violating the Commerce Clause. Therefore, because Blue Circle is entitled to judgment as a matter of law on the basis of uncontroverted material facts, the Court grants summary judgment to Blue Circle on the Commerce Clause claim as well.

For the foregoing reasons, Plaintiff Blue Circle's Motion for Summary Judgment is hereby granted.

IT IS SO ORDERED.