1999 OK 7

2005 OK CIV APP 61

**Harry McMULLAN III, Mary T. McMullan Talley, and McMullan Family Limited Partnership, Plaintiffs/Appellants,**

v.

**OKLAHOMA COUNTY BOARD OF TAX ROLL CORRECTIONS, a Political Subdivision of the State of Oklahoma, Forrest "Butch" Freeman, Oklahoma County Treasurer, in his official capacity, and Mike Means, Oklahoma County Assessor, in his official capacity, Defendants/Appellees.**

**No. 101,218.**

Court of Civil Appeals of Oklahoma, Division No. 3.

June 1, 2005.

Byron K. Linkous, Richard B. Kells, Hartzog, Conger, Cason & Neville, Oklahoma City, OK, for Plaintiffs/Appellants.

Gretchen Crawford, Assistant District Attorney, Oklahoma City, OK, for Defendants/Appellees.

Opinion by KENNETH L. BUETTNER, Chief Judge.

¶1 Plaintiffs/Appellants Harry McMullan III, Mary T. McMullan Talley, and McMullan Family Limited Partnership (collectively, "Taxpayers") appeal from the district court's order granting summary judgment to Defendants/Appellees Oklahoma County Board of Tax Roll Corrections, a political subdivision of the State of Oklahoma ("Board"), Forrest "Butch" Freeman, Oklahoma County Treasurer, in his official capacity ("Treasurer"), and Mike Means, Oklahoma County Assessor in his official capacity ("Assessor") (collectively, "County Officials"). In the district court, Taxpayers appealed the Board's denial of their timely-filed complaint which challenged the Board's correction of the ad valorem tax assessment for certain manufacturing facilities owned by Taxpayers. Following *de novo* review, the district court entered summary judgment in favor of the Board. We reverse the district court's decision as it applies to the tax years 2000 and 2001 based on our finding Taxpayers were entitled to judgment as a matter of law regarding the correction of the assessments for those years. We affirm summary judgment in favor of County Officials on the issue of correction of the assessment for 2002.

¶2 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not

proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶ 3 The material facts of this case are not in dispute. Taxpayers own manufacturing property in Oklahoma County which qualified for a five year ad valorem tax exemption.[1] Taxpayers complied with the statutory requirements for filing an application for the exemption in 1998 and 1999.[2] Taxpayers failed to file applications for the exemption in 2000, 2001, and 2002.[3] However, Taxpayers' exemption was not changed or removed from the Oklahoma County tax rolls for 2000 or 2001, despite the failure to file an application.[4] Assessor and Treasurer certified the tax rolls for 2000 and 2001 and Taxpayers undisputedly paid the taxes, reflecting the exemption, for those years.

¶ 4 Upon discovery of the error in not removing the exemption despite the lack of application, the Board held a meeting February 19, 2002, in which it issued certificates correcting Taxpayers' assessments for 2000 and 2001 to reflect the full tax without the exemption.[5] The notice of the correction, along with a bill for the additional taxes, was dated March 28, 2002 and Taxpayers received the notice close to that date.[6] The notice informed Taxpayers they had until April 30, 2002 to pay the additional taxes without penalty or interest, and that after that date, unpaid taxes would be delinquent.

¶ 5 Taxpayers filed their Complaint with the Board April 30, 2003.[7] Hearing on the complaint was held May 19, 2003, and the Board denied the complaint the same day. Taxpayers then appealed the denial to the district court.[8] The parties filed competing motions for summary judgment which were heard May 21, 2004. At the conclusion of the hearing, the district court announced that it would grant summary judgment to County Officials, based on the court's findings that: 1) Taxpayers failed to file the applications for the exemption for the three years in question, which caused the exemption to be lost; 2) County Officials met their obligation to remove the exemption from the tax rolls under 62 O.S.2001 § 193 and 68 O.S.2001 § 2845; 3) Taxpayers received the notice which was required; and 4) no due process violation occurred. Taxpayers' motion for new trial was later denied.

■ ¶ 6 This case is governed by the Ad Valorem Tax Code, 68 O.S.2001 § 2801 *et seq.* Under the Code, each county assessor is charged with determining the value of all

1. Oklahoma Const. Art. X, § 6B provides for a five year property tax exemption for manufacturing facilities. The procedure for applying for such exemption is prescribed by 68 O.S.2001 §§ 2902(F) and 2902.1. The Oklahoma Tax Commission informed Taxpayers the subject property qualified for the exemption in a letter dated February 27, 1998 (attached as Exhibit C to Taxpayers' Petition for Review).

2. An application must be filed with the county assessor by March 15 of each year for which the exemption is claimed. 68 O.S.2001 § 2902(F).

3. Taxpayers blamed this on an inadvertent omission. The reason for the failure to apply has no bearing on our review or decision.

4. County Officials likewise blamed this on an inadvertent omission.

5. Taxpayers did not have notice of this meeting. At the meeting, the Board issued Corrected Tax Roll Certificate No. 426 for 2000, which increased the ad valorem tax from $15,634.27 to $43,059.87, and Corrected Tax Roll Certificate

No. 427 for 2001, which increased the tax from $16,408.18 to $45,191.37.

6. Taxpayers argued they were harmed by the Board's failure to offer this notice before the March 15 deadline to file an application for the exemption for 2002. Taxpayers asserted that a notice prior to March 15 would have served to remind them to timely file the 2002 exemption application. We find no statutory requirement for the Board, or any other party, to warn or otherwise notify a taxpayer that it has failed to file an application for an exemption. The result of Taxpayers' failure to file a timely application for the exemption for 2002 will be discussed below.

7. A taxpayer may file a complaint with the Board within one year of the date the tax account becomes delinquent. 68 O.S.2001 § 2871(B).

8. Once the Board has denied the complaint, the taxpayer may seek *de novo* review of the Board's decision in the district court. 68 O.S.2001 § 2871(H).

property located in the county and listing and assessing the tax on such property. The Assessor must prepare tax rolls showing a list of all owners of taxable property within the county and the assessed value, and a list of all taxable lands in the county and the name of the owners, the assessed value, and the taxes extended for each tract. 68 O.S. 2001 § 2868(A). The tax rolls must also show the tax due and extended. 68 O.S.2001 § 2868(B). The tax rolls additionally must indicate which properties are subject to exemptions and the amount of the exemption. 68 O.S.2001 § 2868(D). Once the tax rolls have been completed, it is the assessor's duty to extend the tax levies on the tax rolls immediately. 68 O.S.2001 § 2869(A). The assessor then delivers the tax rolls to the county treasurer and files an abstract of the tax rolls with the county clerk. 68 O.S.2001 § 2869(B). The county treasurer is charged with collecting the taxes extended in the tax rolls. 68 O.S.2001 § 2869(E) and (F).

¶ 7 Title 68 O.S.2001 § 2871 provides for the creation of a board of tax roll corrections in each county and outlines the procedures for correcting the tax rolls.[9] That section

9. Section 2871 Correction or alteration of tax rolls-Board of tax rolls corrections created

A. After delivery of the tax rolls to the county treasurer of any county, no correction or alteration as to any item contained therein as of such date of delivery shall ever be made, except by the county treasurer and on authority of a proper certificate authorized by law or pursuant to order or decree of court in determination of a tax protest or other proper case.

B. A board of tax roll corrections is hereby created and shall consist of the chair of the board of county commissioners as chair, the chair of the county equalization board as vice-chair, the county clerk as nonvoting member and secretary, and the county assessor, a majority of whom shall constitute a quorum. The board is hereby authorized to hear and determine allegations of error, mistake or difference as to any item or items so contained in the tax rolls, in any instances hereinafter enumerated, on application of any person or persons whose interest may in any manner be affected thereby, or by his or her agent or attorney, verified by affidavit and showing that the complainant was not at fault through failure to fulfill any duty enjoined upon him or her by law, or *upon discovery by the county treasurer or assessor before the tax has been paid or attempted to be paid* and disclosure by statement of fact in writing signed by the treasurer or assessor and verified by the assessor or treasurer as the case may be. Such right shall not be available to anyone attempting to acquire, or who has acquired, the lien of the county for such tax, whether by purchase, assignment, deed or otherwise. In counties with two county boards of equalization, the chair of each such board shall serve, in alternating years, as the vice-chair of the board of tax roll corrections. When a complaint is pending before the board of tax roll corrections, such taxes as may be owed by the protesting taxpayer shall not become due until thirty (30) days after the decision of the board of tax roll corrections. When a complaint is filed on a tax account which has been delinquent for more than one (1) year, and upon showing that the tax is delinquent, the complaint shall be dismissed, with prejudice.

C. If, upon such hearing, it appears that:

1. Any personal or real property has been assessed to any person, firm, or corporation not owning or claiming to own the same;

2. Property exempt from taxation has been assessed;

3. Exemption deductions allowed by law have not been taken into account;

4. The same property, whether real or personal, has been assessed more than once for the taxes of the same year;

5. Property, whether real or personal, has been assessed in the county for the taxes of a year to which the same was not subject;

6. The county board of equalization has, after delivery of the tax rolls, made a finding of fact under authority of law that, after January 1 of any year and before May 1 of the same year, improvements to real estate or other property assessed have been destroyed by fire, or that the value of land has been impaired, damaged or destroyed by floods or overflow of streams, and has made and entered an adjustment to assessments previously made and entered;

7. Lands or lots have in any manner been erroneously described;

8. Any valuation or valuations assessed and entered are at variance with the valuation finally equalized;

9. Any valuation or valuations returned for assessment and not increased by the county assessor have been entered on the assessment rolls for equalization at variance with the value returned, or in the event of increase by either the county assessor or the county board of equalization and no notice thereof was sent; provided, offer of proof of failure to receive notice may not be heard;

10. Any valuation assessed and entered included, in whole or in part, as of the date of assessment under the law relating thereto, any property that had no taxable situs in the county, did not exist or had been erroneously placed;

11. Any property subject to taxation as of January 1 of any year was thereafter acquired by conveyance of title, including tax title, by the county, or any city, town or school district therein;

12. An error resulted from inclusion in thetotal of levies computed against the valuation entered, a tax levy or levies certified and final for none or part of which such property was liable in fact and the same be self-evident on recomputation, and involve no question of law;

13. As to personal tax, if there has been an error in the name of the person assessed, or, as to real property, the record owner at the time of assessment desires that his or her name be entered in lieu of whatever other name may have been entered as "owner" upon the roll;

14. *There has been any error in the tax extended against the valuation entered, whether by erroneous computation or otherwise;*

15. There has been any error in transcribing from the county assessor's permanent survey record to the assessment rolls either as to area or value of lands or lots or as to improvements thereon;

16. The county treasurer has, of his or her own volition, restored to the tax rolls any tax or assessment where the entry upon the tax rolls shows the same theretofore to have been stricken or reduced by certificate issued by constituted authority, except where restored by specific court order or in conformity to general decree of the Supreme Court of Oklahoma invalidating in mass all such certificates of a class certain, and except if the owner of such property demand its restoration and make payment, in which instance the county treasurer shall require that the owner sign on the face of the owner's receipt a statement that the owner "paid voluntarily without demand, request or duress"; or

17. Any personal property assessment and personal tax charge has been entered upon the assessment and tax rolls except upon proper return of assessment by the taxpayer or increase thereof with due notice, or as a delinquent assessment made by the county assessor or deputies in detail either on view or reliable information; then, in the event any of the grounds stated in this subsection are present, it shall be the duty of the board of tax roll corrections to make and the secretary to enter its findings of fact and to correct such error, if such exists, by issuing its order, in words and figures, to accomplish such:

a. if such error increases the amount of tax charged, the county clerk shall issue a certificate of error to the county assessor ordering the assessor to certify such correction or increase to the county treasurer for entry on the tax rolls, and

b. if such error does not increase the amount of tax charged, the county clerk shall issue a certificate of error to the county treasurer if the tax be not paid, stating the amount or other effect of such order, and it shall be the duty of such county treasurer to make and enter such correction upon the tax rolls and, if there be a decrease to the amount of tax charged, to enter a credit, in lieu of cash, for the amount of decrease of tax shown in such certificate.

D. *If, prior to such hearing by the board, as provided by this section, the tax has been paid,* no certificate shall issue; but if less than one (1) year shall have elapsed after the payment of the tax and before the filing of such application for correction of error, and after such hearing the findings of fact disclose that less tax was due to have been paid than was paid, then the person who paid the tax, or such person's heirs, successors, or assigns, may execute a cash voucher claim setting forth facts and findings, verify it, and file it with the county clerk, who shall thereupon deliver such claim to the county treasurer for designation of the fund from which the claim must be paid and approval of the claim as to availability of funds by the county treasurer. If taxes have been paid under protest, the county treasurer must designate the refund to be paid from such protest fund. If taxes have been paid but not paid under protest and if there are funds available in current collections of the taxing unit which received the taxes paid, then the county treasurer must designate the refund to be paid from such current collections of such taxing unit. The county clerk shall thereupon issue a cash voucher against the appropriate fund of the county, directing the county treasurer to pay to such person the amount so found to be erroneous. The word "person" as used in this subsection shall comprehend the person, firm, or corporation who paid such tax and the heirs, assigns or successors, as the case may be. No such claim for refund shall be allowed and paid unless the same be filed within six (6) months after the effective date of the order of correction.

\* \* \*

F. Beginning January 1, 1987, notwithstanding the one-year limitations period for filing a claim for refund as provided in subsection D of this section, if there be any error in taxes collected from any person on property constitutionally exempt under Section 6B of Article X of the Oklahoma Constitution, by the county treasurer in counties with a population in excess of five hundred thousand (500,000) persons, according to the latest Federal Decennial Census, to the extent that such county has been reimbursed from the Ad Valorem Reimbursement Fund provided by Section 193 of Title 62 of the Oklahoma Statutes, the overpayment or duplicate payment of any such taxes collected in error may be recovered by the taxpayer as provided by law.

G. Upon dismissal of a complaint or denial of relief to the taxpayer, the county clerk, as secretary of the board of tax roll corrections, shall prepare a letter order of dismissal or denial which shall be mailed to the taxpayer or person at the address found on the complaint.

H. Both the taxpayer and the county assessor shall have the right of appeal from any order of the board of tax roll corrections to the district court of the same county. In case of appeal the trial in the district court shall be *de novo.*

I. Notice of appeal shall be served upon the county clerk, as secretary of the board of tax

provides that once the county assessor has delivered the tax rolls to the county treasurer, there can be no correction or alteration of the tax rolls except by a proper certificate authorized by law or by a decree of court in a tax protest case. Subsection B of Section 2871 provides that the boards of tax roll corrections may issue certificates correcting the tax rolls after they have been delivered to the county treasurer. Certificates may only issue under specific circumstances, however. Pertinent to this case, Section 2871(B) provides that a board of tax roll corrections may issue a certificate "upon discovery [of error, mistake, or difference] by the county treasurer or assessor *before the tax has been paid* or attempted to be paid ...." [10] (emphasis added).

¶ 8 Taxpayers relied on this language to argue before the Board and in the district court that no certificate of correction can issue once the taxes have been paid or attempted to be paid. Taxpayers' argument is supported by an opinion of the Oklahoma Attorney General. In AG Opinion 87–103 (1988), the questions presented were whether a family in possession on a contract for deed qualified for a homestead exemption, and if not, whether the exemption previously granted may be revoked by the assessor. The opinion explained that a purchaser who takes possession under a contract for deed may qualify for the homestead exemption under certain circumstances. The opinion then answered the second question, whether a homestead exemption previously granted may be revoked, based on the Attorney General's conclusion that there are circumstances in which a purchaser who takes possession under a contract for deed does not in fact qualify for the exemption. The Attorney General noted a previous discussion of a related issue in AG Opinion 72–102.[11] In Opinion 87–103, the Attorney General expressly stated "(t)he assessor can seek such a certificate *only in those cases where the ad valo-*

---

roll corrections, and a copy served upon the county assessor. The appeal shall be filed in the district court within fifteen (15) days of the date of the mailing of the order of the board of tax roll corrections to the taxpayer. (Emphasis added).

10. The language in Section 2871(B) regarding an error raised by the taxpayer is not relevant to this case because the error here was first discovered by Assessor and Treasurer. Section 2871(C) lists 17 circumstances in which a certificate may issue and it appears this case comes within Section 2817(C)(14), "(t)here has been any error in the tax extended against the valuation entered, whether by erroneous computation or otherwise;". In Attorney General Opinion 72–102 (1972), the question was whether 68 O.S. 1971 § 2479 (now § 2871) authorized a board of tax roll corrections to issue an order accomplishing the correction of an error relating to the improper allowance of a homestead exemption. The response noted that the question was limited to the discovery of the improper exemption after the tax rolls had been delivered to the county treasurer, because before such delivery, the § 2871 procedures are not required. Opinion 72–102 involved the sale of real property shortly after the beginning of the tax year. The ad valorem taxes, including the homestead exemption, were assessed against the seller who sought a correction from the board to remove the assessment for property the seller no longer owned. In the meantime, the buyer had failed to file an application for homestead exemption and the county assessor filed an application for certificate of correction in which he alleged the ex-

emption was erroneously allowed. The board of tax roll corrections granted both correction applications and removed the tax assessment as to the seller and disallowed the homestead exemption previously allowed to the buyer. The Attorney General noted that Section 2871 requires a certificate in order to correct the ad valorem tax rolls and noted

(t)his language authorizes the Board to act only upon application of a party whose interests may in any manner be affected by an alleged "error, mistake or difference," or upon the filing of such an application by the County Treasurer or Assessor "before the tax has been paid or attempted to be paid."

The opinion then noted that one of the specific grounds for issuing a certificate must be shown. The Attorney General cited *Allen v. Bd. of Co. Comm'rs of Pittsburgh County*, 1911 OK 130, 116 P. 175, 28 Okla. 773, for its holding that the powers of county commissioners are strictly construed. Opinion 72–102 found that the erroneous allowance of a homestead exemption fell under Section 2871(C)(14) which allowed a correction where there has been any error in the tax extended. The opinion therefore concluded that the board of tax roll corrections could issue a certificate to correct that circumstance. Although this case involves a manufacturing exemption, by analogy it is similar to the homestead exemption analysis provided by Attorney General Opinion 72–102 and we conclude that the facts of this case fall within Section 2871(C)(14).

11. Discussed in note 10, *supra*.

*rem taxes for the year in question have not been paid or where there has been no attempt to make the ad valorem tax payments."* [12] (Emphasis added). Attorney General Opinion 72–102 also recognized this statutory limitation on the assessor's or treasurer's ability to seek correction of the tax rolls.

¶ 9 Taxpayers argued that Attorney General Opinion 87–103 established that the Board was without authority to issue correction certificates for 2000 and 2001 because Taxpayers had paid or attempted to pay the taxes for those years at the time Assessor discovered the exemption had been granted without applications for those two years. Attorney General opinions are persuasive authority, and silence by the Legislature may be regarded as acquiescence or approval of the interpretation placed upon the provision by the Attorney General. *National Cowboy Hall of Fame and Western Heritage Center v. State ex rel. Oklahoma Human Rights Commission,* 1978 OK 76, 579 P.2d 1276, 1279. We also find support for Taxpayers' argument in *Allen, supra,* which held that the powers granted to county officials regarding taxation are strictly construed, and *Stevenson v. Friend,* 1945 OK 355, 165 P.2d 133, 135, 196 Okla. 249, which noted that it was

> evidently the legislative intent in adopting said section 12642 (now 68 O.S. § 2871) that if there was such an erroneous assessment, *then as long as the taxes based thereon remained on the tax roll and unpaid, the property owner could have correction of that which was erroneous,* and could have cancellation of such taxes to the extent erroneous before paying his taxes, if he proceeded in the manner set out, and made the required showing. [13]

It is also firmly established that tax statutes must be strictly construed against the state. *Strelecki v. Oklahoma Tax Commission,* 1993 OK 122, ¶ 20, 872 P.2d 910; *Wilson v.*

*State ex rel. Oklahoma Tax Commission,* 1979 OK 62, ¶ 5, 594 P.2d 1210.

¶ 10 In support of summary judgment in their favor, County Officials first cited Attorney General Opinion 2003–23, which held that a county assessor may not waive the deadline for application for an exemption, nor grant an exemption solely based on the assessor's view that the exemption is in the best interest of the public. We find that opinion has no bearing on this case because the issue was not whether Assessor could waive the deadline for filing the application. The issue was whether the Board could issue the tax roll correction certificates under the facts here.

¶ 11 County Officials next argued that "it can't be the case" that Section 2871(B) means that a correction certificate may not issue upon request of the assessor made after the taxes have been paid or attempted to be paid. But, the plain language of Section 2871 provides that a correction certificate may not issue after the tax has been paid. The Oklahoma Supreme Court has explained:

> The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in a statute. In the absence of a contrary definition, words in a statute "are to be given the same meaning as that attributed to them by ordinary and common definitions." We employ the presumption "that every provision of our statutes has been intended for some useful purpose and should be given effect."

*Samson v. Oklahoma Tax Commission,* 1998 OK 82, ¶ 7, 976 P.2d 532 (citations omitted). In support of disregarding the language in Section 2871 which indicates the Board was without authority to issue the certificates for 2000 and 2001, County Officials argued two statutes require that an erroneous exemption may be corrected at any time. The manufacturing exemption applicable to Taxpayers in this case is included in Oklahoma Const.

---

**12.** The opinion then concluded that an erroneously granted exemption may be revoked so long as the assessor complies with Section 2871.

**13.** (Emphasis added). This rule has been changed in that a taxpayer who has paid his taxes may in certain circumstances seek reimbursement of excess assessments collected in error. See 68 O.S.2001 § 2871(D) and (F).

Art. X, § 6B. That section provides a partial exemption for new or expanded manufacturing facilities. The Oklahoma Tax Commission reimburses counties for the loss of tax revenue resulting from the manufacturing exemption. 62 O.S.2001 § 193.[14]

¶ 12 County Officials relied on the following language in 62 O.S.2001 § 193(B): "(i)f the Tax Commission determines that an exemption has been erroneously or unlawfully granted, it shall notify the appropriate county assessor who shall immediately value and assess the property and place it on the rolls for ad valorem taxation." County Officials asserted this language required the tax rolls to be corrected despite the fact Taxpayers had paid or attempted to pay the taxes at the time the error was discovered. We note, however, that the property at issue in this case had previously been valued, assessed, and taxed-only the amount of tax due was reduced due to the manufacturing exemption. And, County Officials asserted that after they discovered the error in granting Tax-

payers' exemption without the application, Assessor "sought certificates of corrections from the Board of Tax Roll Corrections." Section 193 does not refer to use of correction procedures or the boards of tax roll corrections. County Officials conceded that a certificate was required in order to correct the tax rolls. Necessarily, a certificate may only issue under the terms of § 2871, regardless of Section 193, which is included in the statutes addressing the OTC rather than in the Ad Valorem Tax Code and the specific procedures a board of tax roll corrections must follow in correcting county ad valorem tax rolls.

■ ¶ 13 It is a basic rule of statutory construction that in the case of conflicting statutes, a specific statute controls over one of more general applicability. *Duncan v. Oklahoma Dept. of Corrections,* 2004 OK 58, 95 P.3d 1076, 1079. We therefore hold that 62 O.S.2001 § 193, which is not part of the Ad Valorem Tax Code, does not control the

14. § 193. Ad Valorem Reimbursement Fund–Claims–Distribution of funds

A. There is hereby created in the State Treasury a revolving fund for the Oklahoma Tax Commission to be designated the "Ad Valorem Reimbursement Fund". The fund shall be a continuing fund, not subject to fiscal year limitations. Monies apportioned to this fund shall be expended:
1. To reimburse counties of this state for loss of revenue due to exemptions of ad valorem taxes for new or expanded manufacturing or research and development facilities;
\* \* \*
Provided that it shall be the duty of the Tax Commission to assess the valuation of all property for new or expanded manufacturing or research and development facilities which are exempt from ad valorem taxes.
Monies apportioned to this fund also may be transferred to other state funds or otherwise expended as directed by the Legislature by law.
B. The county commissioners of each county seeking reimbursement for lost revenue from the Ad Valorem Reimbursement Fund shall make claims for reimbursement on forms prescribed by the Tax Commission prior to April 30 of each year. Claims for reimbursement for loss of revenue due to exemptions of ad valorem taxes for new or expanded manufacturing or research and development facilities shall be made separately from claims for reimbursement for loss of revenue for school district and county purposes due to exemptions granted pursuant to the provisions of Section 2890 of Title 68 of the Oklahoma Statutes and

separately from claims for reimbursement for loss of revenue for decreased valuation and assessment of buffer strips. Provided, the assessed valuation of a school district as stated in the claim for reimbursement shall be the same as reported to the State Department of Education on the Estimate of Need and shall include the total valuation of property exempt from taxation pursuant to Section 2902 of Title 68 of the Oklahoma Statutes. The claims shall be either approved or disapproved in whole or in part by the Tax Commission by June 15 of each year. A claim for reimbursement for loss of revenue due to an exemption of ad valorem taxes for a new or expanded manufacturing or research and development facility shall be disapproved if a county or school district has received any payment in lieu of ad valorem taxes from such facility, to the extent of the amount of such reimbursement. *If the Tax Commission determines that an exemption has been erroneously or unlawfully granted, it shall notify the appropriate county assessor who shall immediately value and assess the property and place it on the rolls for ad valorem taxation.* Disbursements from the fund shall be made on warrants issued by the State Treasurer against claims filed by the Tax Commission with the Office of State Finance for payment. Such disbursements shall be exempt from all agency expenditure ceilings. The county treasurer shall apportion or disburse such funds for expenditures in the same manner as other ad valorem tax collections.
\* \* \*
(Emphasis added).

specific provision of the Code regarding the procedural requirements for correcting the tax roll where an erroneous assessment has been made.

¶ 14 County Officials also relied on 68 O.S. 2001 § 2845. That section provides that where property has "failed to be assessed" for prior years, it shall be assessed by the county assessor and the taxes may be paid without penalty. County Officials averred that Taxpayers' property failed to be assessed during 2000 and 2001. The record fails to support this argument. As noted above, Taxpayers' manufacturing property was in fact assessed and Taxpayers paid the taxes for which they were billed. Otherwise, Taxpayers would not have a basis to rely on that part of Section 2871(B) which allows tax correction certificates only where the tax has not been paid. Section 2845 is not applicable in a case such as this where the property was assessed and taxed at a reduced amount.

¶ 15 County Officials correctly assert that Taxpayers failed to file the application required to receive the manufacturing property tax exemption. Assessor nevertheless failed to remove the exemption from the tax rolls before the 2000 and 2001 taxes were paid. Under the plain language of Section 2871(B), a tax roll correction certificate could not issue for those years because the taxes had undisputedly been paid at the time Assessor discovered its error. We therefore hold the Board erred in granting the certificate for those years and the trial court erred as a matter of law in granting summary judgment to County Officials as to those two years.

¶ 16 It is undisputed, however, that Assessor discovered the erroneous exemption as to the 2002 tax year before Taxpayers attempted to pay the tax for those years and the Board followed the statutory procedures for issuing a tax roll correction certificate for that year. Taxpayers were not entitled to a warning or reminder about the application requirement, nor were they entitled to notice of the correction proceeding, and indeed as a result, the Board afforded Taxpayers time within which to pay the increased tax without penalty. We therefore affirm summary judgment in favor of County Officials as to the correction of the tax roll for the year 2002.

AFFIRMED IN PART/REVERSED IN PART

JOPLIN, P.J., and HANSEN, J., concur.