957 F.2d 761
 John T. DORRANCE, III, Plaintiff-Appellant,
v.
Ed McCARTHY, President Wyoming Game and Fish Commission;
Kenneth Brown, Kevin Dooley, Kari Priewe, Donald Scott,
Norman Pape and Rusty Holler, Commissioners of the Wyoming
Game and Fish Commission, Defendants-Appellees,
Wyoming Wool Growers Association, Wyoming Public Lands
Council, Exotic Wildlife Association, North
American Elk Breeders Association,
Wyoming Wildlife Federation,
Amici Curiae.
 No. 91-8024.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 19, 1992.
 
 John M. Daly of Daly, Anderson & Taylor, Gillette, Wyo., and Charles H. Critchlow of Coudert Brothers, New York City, for plaintiff-appellant.
 Joseph B. Meyer, Atty. Gen., Ronald P. Arnold, Sr. Asst. Atty. Gen., and Bruce A. Salzburg, Sp. Asst. Atty. Gen., State of Wyom., of Herschler, Freudenthal, Salzburg, Bonds & Rideout, Cheyenne, Wyo., for defendants-appellees.
 Kermit Brown of Brown, Erickson & Hiser, Rawlins, Wyoming, filed an amicus curiae brief, for Wyoming Wool Growers Ass'n and Wyoming Public Lands Council.
 Mark H. Miller of Gunn, Lee & Miller, San Antonio, Tex., filed an amicus curiae brief, for Exotic Wildlife Ass'n.
 Sam Withiam, Cushing, Okl., filed an amicus curiae brief, for North American Elk Breeders Ass'n.
 Mark Squillace, Laramie, Wyo., and Marion Yoder, Denver, Colo., filed an amicus curiae brief, for Wyoming Wildlife Federation.
 Before MOORE, TACHA and BRORBY, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Plaintiff appeals the entry of summary judgment in favor of Defendants on Plaintiff's claims for declaratory and injunctive relief arising from Defendants' denial of Plaintiff's application for a permit to receive, import, possess, and manage elk, moose, antelope, and bighorn sheep. Defendants are members of Wyoming's Game and Fish Commission. Plaintiff claimed that Defendants' refusal to grant him a permit and their enforcement of Wyoming statutes that prohibit Plaintiff from importing and possessing the animals violated the Commerce Clause, as well as Plaintiff's Fourteenth Amendment rights to equal protection and due process. On appeal, Plaintiff does not challenge the district court's ruling on his Fourteenth Amendment claims. Therefore, the only issue before us is whether the district court properly determined on summary judgment that the statutes at issue do not unconstitutionally burden interstate commerce.[1] We conclude that the district court erred in entering summary judgment for Defendants, and, therefore, reverse.
 
 
 2
 We review a grant or denial of summary judgment de novo, applying the same standard as the district court under Fed.R.Civ.P. 56. Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990). Pursuant to Rule 56(c), summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." "When applying this standard, we are to examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Abercrombie, 896 F.2d at 1230.
 
 
 3
 Plaintiff is a Wyoming resident who owns and operates a ranch near Devils Tower. In 1989 and 1990, he applied for a permit from Defendants to import, possess, and manage certain animals that are classified as big game animals by statute in Wyoming, see Wyo.Stat. § 23-1-101, for the purposes of breeding and rearing, exhibition, weed control research, meat production, and possible controlled hunting. Defendants denied the permit, citing Wyo.Stat. § 23-1-103, which provides in part that "[t]here shall be no private ownership of live animals classified in this act as big or trophy game animals," and noting that the application was not submitted by a public entity.
 
 
 4
 Plaintiff brought suit against Defendants, alleging that their enforcement of Wyo.Stat. § 23-1-103, barring the private ownership of big game animals, and Wyo.Stat. § 23-3-301, barring the importation into Wyoming of any living big game animal, constituted a discriminatory and excessive burden on interstate commerce. In the district court, Defendants contended that Plaintiff did not have standing to challenge the import ban because Defendants denied Plaintiff's permit application solely on the basis of the private ownership ban. On appeal, Defendants argue that the constitutionality of the import ban was never before the district court.
 
 
 5
 Our review of the district court's order shows that the court passed on the constitutionality of both the private ownership and the import bans. The district court, therefore, must have determined that Plaintiff had standing to challenge the import ban. We see no error in such a determination. Plaintiff sought a permit to receive, import, possess, and manage big game animals. That Defendants denied Plaintiff's application solely on the basis of the private ownership ban does not change the fact that the import ban also would have prevented Plaintiff from obtaining the permit he requested, so he has standing to challenge the import ban. See Sporhase v. Nebraska ex rel. Douglas, 458 U.S. 941, 944 n. 2, 102 S.Ct. 3456, 3458 n. 2, 73 L.Ed.2d 1254 (1982) (holding that plaintiffs' failure to apply for permit to transport ground water did not deprive them of standing to challenge statute regulating such transport because plaintiffs could not have qualified for permit if they had applied for one).
 
 
 6
 In reviewing the propriety of the district court's ruling on Plaintiff's challenge to the Wyoming statutes, we are guided by the principles set forth by the Supreme Court in other Commerce Clause cases.
 
 
 7
 Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.
 
 
 8
 Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) (citation omitted). The person challenging a statute that regulates evenhandedly bears the burden of showing that the incidental burden on interstate commerce is excessive compared to the local interest. Hughes v. Oklahoma, 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979).
 
 
 9
 By contrast, if a statute discriminates against interstate commerce either on its face or in its practical effect, it is subject to the strictest scrutiny, and the burden shifts to the governmental body to prove both the legitimacy of the purported local interest and the lack of alternative means to further the local interest with less impact on interstate commerce. Wyoming v. Oklahoma, --- U.S. ----, ----, 112 S.Ct. 789, 799-801, 117 L.Ed.2d 1 (1992). "Thus, where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected." City of Philadelphia v. New Jersey, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978).
 
 
 10
 The district court properly concluded that Wyoming's ban on the private ownership of big game animals operates evenhandedly. In concluding that the ban was not excessive, however, the district court ignored evidence presented by Plaintiff that created material issues of fact as to both the amount of burden the ban imposed on interstate commerce, and whether the local interest could be advanced through less burdensome alternatives.
 
 
 11
 The court concluded that the purposes of the private ownership ban asserted by Defendants, i.e., to preserve a free-ranging wildlife resource, to prevent the spread of disease and genetic alteration, and to facilitate enforcement of game laws, were legitimate local concerns that were advanced by the statute. The court then concluded that the burden on interstate commerce created by the private ownership ban was "relatively slight." Appellant's App. at 185. The court based its conclusion on two factors. First, the one private big game reserve that was grandfathered in under the statute engaged in only a small amount of interstate commerce in big game animals between the statute's enactment and the present. Second, "the statute does not bar out-of-state traders from dealing with public entities." Id.
 
 
 12
 In so ruling, the court focused on the amount of interstate commerce with Wyoming that could or did occur despite the private ownership ban, rather than considering evidence of the extensive interstate market in big game animals that was shut out of Wyoming because of the ban. In their brief on appeal, Defendants contend that when a statute regulates evenhandedly, the extent of the burden the statute imposes on interstate commerce is irrelevant; the only inquiry is whether the statute imposes a different burden on interstate commerce than it does on intrastate commerce. Defendants' argument is not only circular, but it completely misstates the Pike analysis.
 
 
 13
 By definition, a statute that regulates evenhandedly does not impose a different burden on interstate commerce than it does on intrastate commerce. Furthermore, the Supreme Court has made clear that the extent of the burden on interstate commerce is a key inquiry under the Pike analysis. See, e.g., Raymond Motor Transp., Inc. v. Rice, 434 U.S. 429, 444-45, 98 S.Ct. 787, 795-96, 54 L.Ed.2d 664 (1978) (discussing evidence carrier presented that Wisconsin's double trailer ban increased the cost of moving goods, slowed the movement of goods, and disrupted the carrier's business, thereby imposing an excessive burden on interstate commerce in relation to the local benefit).
 
 
 14
 The district court also failed to consider whether Wyoming's interests could be advanced through less burdensome means than a complete ban on private ownership of big game animals. Plaintiff presented affidavits from several experts concerning each of the interests Defendants asserted the private ownership ban was designed to advance. Defendants summarize Plaintiff's evidence in their brief on appeal as follows:
 
 
 15
 Dr. Davis asserted that the diseases of concern to Wyoming also occurred in domestic animals which are freely imported into Wyoming and that wildlife could be tested for the diseases in the same manner that domestic animals are tested.
 
 
 16
 Dr. Templeton denied that importing farmed big game animals could alter the genetics of free-ranging herds; asserted that escaped animals could easily be recaptured; and asserted that genetic purity could be determined by pre-import observation and testing.
 
 
 17
 David Whittlesey, a Colorado elk rancher, asserted that he had never had any problem with escapes, and that prevention of illegal taking of wild elk could be accomplished by unannounced spot checks of game farms by law enforcement officers.
 
 
 18
 Brief of Defendants-Appellees at 4-5. Plaintiff also presented evidence that Wyoming historically has permitted the erection of fences that interfere with native animals' ability to range freely and are no different than the fences that would be erected to keep in privately owned big game animals.
 
 
 19
 Defendants concede that Plaintiff's evidence "raised a number of factual issues," id., but contend that because the evidence related to whether alternative means existed to accomplish the state's purposes with less impact on interstate commerce, the evidence was irrelevant to the court's inquiry and properly ignored. Defendants' argument is contrary to the analysis articulated in Pike and the application of that analysis in twenty years of Supreme Court precedent.
 
 
 20
 The Court held in Pike that "the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." 397 U.S. at 142, 90 S.Ct. at 847 (emphasis added). The Court has continued to consider the availability of less burdensome alternatives in analyzing Commerce Clause challenges to statutes that regulate evenhandedly. See, e.g., Northwest Cent. Pipeline Corp. v. State Corp. Comm'n, 489 U.S. 493, 526, 109 S.Ct. 1262, 1282, 103 L.Ed.2d 509 (1989) (considering and rejecting as unsupported by the evidence plaintiff's argument that regulation permanently cancelling producers' entitlements to assigned quantities of certain gas if production were delayed too long should be invalidated under Pike because state could achieve its goals without burdening interstate commerce).
 
 
 21
 Because Plaintiff presented evidence that created genuine issues of material fact as to whether the private ownership ban's burden on interstate commerce was "clearly excessive in relation to the putative local benefits," Pike, 397 U.S. at 142, 90 S.Ct. at 847, the district court erred in entering summary judgment on Plaintiff's challenge to the private ownership ban.
 
 
 22
 The district court also erred in entering summary judgment on Plaintiff's challenge to the import ban. Much of the evidence that created material issues of fact concerning the constitutionality of the private ownership ban also applied to the constitutionality of the import ban, and the district court erred in failing to consider it.
 
 
 23
 In addition, the district court incorrectly concluded that the import ban regulates evenhandedly, and, therefore, placed the burden on Plaintiff to demonstrate that the ban was unconstitutional. The import ban discriminates against interstate commerce on its face. "[A] law that overtly blocks the flow of interstate commerce at a State's borders" is the "clearest example" of legislation that effects economic protectionism, for which "a virtually per se rule of invalidity has been erected." City of Philadelphia, 437 U.S. at 624, 98 S.Ct. at 2535. "At a minimum such facial discrimination invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." Hughes, 441 U.S. at 337, 99 S.Ct. at 1737; accord Wyoming, 112 S.Ct. at 799-801. Therefore, Defendants bear the burden of showing that the ban is not unconstitutional. See Hughes, 441 U.S. at 336, 99 S.Ct. at 1736 (stating that " '[w]hen discrimination against commerce ... is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake' " (quoting Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383 (1977))); Maine v. Taylor, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986) (imposing burden on state to justify statute banning import of all live baitfish).
 
 
 24
 The judgment of the United States District Court for the District of Wyoming is REVERSED, and the action is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument