2007 OK CIV APP 68

**PANHANDLE PRODUCERS AND ROYALTY OWNERS ASSOCIATION; Cambridge Producers, Ltd.; and Thomas R. Cambridge, Plaintiffs/Appellants,**

v.

**OKLAHOMA TAX COMMISSION; and Thomas E. Kemp, Jr., Jerry B. Johnston, and Constance Irby, Tax Commissioners, all in their official capacities, Defendants/Appellees.**

No. 104,002.

Court of Civil Appeals of Oklahoma, Division 1.

March 28, 2007.

Certiorari Denied July 2, 2007.

Approved for Publication by the Supreme Court July 2, 2007.

John Steven Gardner, Harlan Hentges, Mulinix, Ogden, Hall, Andrews & Ludlam, PLLC, Oklahoma City, Oklahoma, and Joseph F. Becker, Mountain States, Legal Foundation, Lakewood, Colorado, for Plaintiffs/Appellants.

Douglas B. Allen, Guy L. Hurst, Sean R. McFarland, Oklahoma Tax Commission, Oklahoma City, Oklahoma, for Defendants/Appellees.

BUETTNER, J.

¶ 1 At issue in this case is the constitutionality of an Oklahoma statute requiring operators to withhold income tax from oil and gas royalty payments made to royalty interest owners who do not reside in Oklahoma. Plaintiffs/Appellants Panhandle Producers and Royalty Owners Association (PPROA), Cambridge Producers, Ltd., and Thomas R. Cambridge, assert that the statute imposes disparate taxation based on state of residence, in violation of the Privileges and Immunities Clause, the Equal Protection Clause, and the Interstate Commerce Clause of the United States Constitution. Defendant/Appellee Oklahoma Tax Commission (OTC) asserts the statute is constitutional because it does not impose different tax rates based on residency, but instead is only a different method of collecting the taxes due. The material facts are undisputed. The withholding statute is a method of collecting taxes which does not increase the actual tax burden on non-residents. Additionally, OTC has shown a rational basis for the classification in the statute. The collection method has only an incidental effect of interstate commerce, which is outweighed by OTC's interest in collecting taxes before the income leaves the state. The statute passes constitutional muster and OTC is entitled to judgment as a matter of law. We affirm.

¶ 2 PPROA is a trade association representing royalty owners in Texas, Oklahoma, and Kansas. In its Petition, PPROA asserted it had numerous members subject to the withholding requirement of the statute at issue, 68 O.S.Supp.2006 § 2385.26, which is part of a group of related statutes numbered § 2385.25–§ 2385.28, all of which were passed in 2000.[1] Briefly summarized, § 2385.26 directs payors of oil and gas royal-

---

1. Those sections provide, in pertinent part:

§ 2385.25. Definitions

As used in this section through Section 2385.28 of this title:

* * *

2. "Remitter" means any person who distributes revenue to royalty interest owners; and

3. "Royalty interest owner" means any person who retains a non-working interest in oil or gas production.

§ 2385.26. Royalty interest owner—Withholding and deducting—Exceptions

A. Each remitter, except as otherwise provided in subsection B of this section, shall deduct and withhold from each payment being made to any royalty interest owner in respect to production of oil and gas in this state, but not including that to which the remitter is entitled, an amount equal to five percent (5%) of the gross amount which would have otherwise been payable to the person entitled to the payment.

B. *The obligation to deduct and withhold from payments as provided in subsection A of this section does not apply to those payments which are made to:*

1. *Current or permanent residents of Oklahoma;*

* * *

C. *Any royalty interest owner from whom an amount is withheld* pursuant to the provisions of subsection A of this section, or if the royalty interest owner is not liable to the State of Oklahoma for income taxes, any person to whom a royalty interest owner subsequently distributes royalty payments with respect to which an amount is withheld pursuant to the provisions of subsection A of this section, and *who files an income tax return with this state is entitled to a credit against the tax as shown on*

ties to withhold 5% of such royalties and remit the withholding to OTC. The statute exempts from the withholding requirement those royalty payments made to Oklahoma residents. The statute grants nonresidents credit towards taxes owed for amounts withheld, as well as refunds of amounts withheld which exceed the taxes owed.

the return for the amount withheld by the remitter under subsection A of this section. If the amount withheld is greater than the tax due on the return, the person filing the return shall be entitled to a refund in the amount of the over-payment.
[As originally passed, § 2385.26(A) required remitters to withhold 6.75% from royalty payments. This section was amended effective July 1, 2006. At oral argument held in this case, PPROA asserted the statute was amended only in response to its lawsuit. PPROA claimed 6.75% was greater than the maximum tax rate in Oklahoma. The 5% withholding amount in the current version of the statute is lower than the maximum Oklahoma tax rate.]
§ 2385.27. Payments—Due dates—Returns
A. Any remitter required to deduct and withhold any amount under Section 7 of this act shall pay to the Oklahoma Tax Commission the amounts required to be deducted and withheld as follows:
1. For payments made to royalty interest owners during the months of January, February and March, the withholding amounts shall be due on or before April 30;
2. For payments made to royalty interest owners during the months of April, May and June, the withholding amounts shall be due on or before July 30;
3. For payments made to royalty interest owners during the months of July, August and September, the withholding amounts shall be due on or before October 30; and
4. For payments made to royalty interest owners during the months of October, November and December, the withholding amounts shall be due on or before January 30 of the succeeding calendar year.
* * *
(Emphasis added).

2. United States Const. Art. IV § 2, cl. 1, provides:
"Section 2. The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

3. United States Const., Am. XIV, provides in part:
"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of

¶ 3 PPROA asserted causes of action for violations of the Privileges and Immunities,[2] Equal Protection,[3] and Interstate Commerce Clauses[4] of the U.S. Constitution. PPROA asserted the trial court had jurisdiction of the matter pursuant to 68 O.S.2001 § 226.[5] PPROA asked for a declaratory judgment

law; nor deny to any person within its jurisdiction the equal protection of the laws."

4. United States Const. Art. I § 8, cl. 4 provides:
"The Congress shall have Power to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

5. § 226. Action to recover taxes as additional remedy to aggrieved taxpayer
(a) In addition to the right to a protest of a proposed assessment as authorized by Section 221 of this title, a right of action is hereby created to afford a remedy to a taxpayer aggrieved by the provisions of this article or of any other state tax law, or who resists the collection of or the enforcement of the rules or regulations of the Tax Commission relating to the collection of any state tax; however, such remedy shall be limited as prescribed by subsection (c) of this section.
(b) Within thirty (30) days from the date of mailing to the taxpayer of an assessment for taxes or additional taxes pursuant to Section 221 of this title by the Tax Commission, any such taxpayer shall pay the tax to the Tax Commission, and at the time of making such payment shall give notice to the Tax Commission of his intention to file suit for recovery of such tax. The taxpayer shall not be required to file suit within such thirty-day period in order to prosecute an action as authorized by this section; however, failure to file such suit within one (1) year from the date of mailing of the assessment shall result in the assessment becoming final and absolute.... If the taxpayer prevails and the court determines that the position of the Tax Commission in the proceeding was not substantially justified, the court shall award the taxpayer a judgment for reasonable attorney fees, reasonable expenses of expert witnesses in connection with the proceeding and reasonable costs of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the taxpayer's case.
(c) This section shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and the subject matter. It shall be construed to provide a legal remedy in the state or federal courts by action at law only in cases where the taxes complained of are claimed to be an unlawful burden on interstate commerce, or the collection thereof violative of any Congressional Act or provision of the Federal Constitution, or in

that the statute was unconstitutional, and for an injunction to stop enforcement.

¶ 4 OTC sought to dismiss based on its assertion PPROA did not meet the specific jurisdictional requirements of § 226 because no PPROA member claimed to have received a "proposed assessment" of tax due to trigger § 226(b). PPROA countered that it had claimed its members were subject to the challenged withholding requirement and that it was not protesting an assessment but seeking declaratory relief. PPROA asserted § 226 specifically provides jurisdiction for claims by a taxpayer aggrieved by any state tax law, and that it provides jurisdiction for claims that a tax is unconstitutional. PPROA also noted that in *OTC v. Smith*, 1980 OK 74, 610 P.2d 794, the Oklahoma Supreme Court held that the § 226 remedy is not exclusive, and that a district court has jurisdiction, under 12 O.S. § 1651 to enter a declaratory judgment on the constitutionality of a tax statute even where § 226 is inapplicable. PPROA also claimed jurisdiction was proper under 42 U.S.C. § 1983.[6]

¶ 5 The District Court granted OTC's Motion to Dismiss.[7] In its Second Amended Petition, PPROA added Cambridge, a non-resident royalty interest owner subject to the

withholding requirement of § 2385.26, as a plaintiff.[8] OTC again sought dismissal based on its argument the District Court had no jurisdiction under 68 O.S. § 226[9] and 42 U.S.C. § 1983.[10] OTC asserted jurisdiction was proper only under 12 O.S.2001 § 1651. The trial court dismissed PPROA's claims under § 226 and § 1983.[11]

¶ 6 The parties then filed competing motions for summary judgment on PPROA's and Cambridge's remaining claim for declaratory judgment. The trial court granted summary judgment to OTC October 19, 2006. PPROA and Cambridge appeal.

¶ 7 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment.

cases where jurisdiction is vested in any of the Courts of the United States. In all actions brought hereunder service of process upon the Chairman of the Tax Commission shall be sufficient service, and the Tax Commission shall be the sole, necessary and proper party defendant in any such suit, and the State Treasurer shall not be a necessary or proper party thereto.
\* \* \*
(Emphasis added).

6. Suits for violation of the Commerce Clause may be brought under § 1983 to obtain injunctive and declaratory relief from state action that violates the Commerce Clause. *Dennis v. Higgins*, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). However, the Supreme Court has since held that state courts may not grant relief under § 1983 where there is an adequate state remedy available. *National Private Truck Council, Inc. v. Oklahoma Tax Com'n*, 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995).

7. PPROA then filed a First Amended Petition in which it restated its claims, but asserted jurisdiction under 68 O.S.2001 § 226, 12 O.S.2001 § 1651, and 42 U.S.C. § 1983. In its Answer, OTC asserted the affirmative defenses of lack of

standing, lack of capacity to sue, and failure to state a claim.

8. The Second Amended Petition repeated the claims made in the First Amended Petition, and added a claim for attorney fees under 42 U.S.C. § 1988.

9. OTC asserted the dismissal of the original Petition based on lack of jurisdiction under § 226 was law of the case.

10. OTC noted the United States Supreme Court had held that courts may not employ § 1983 in controversies over state tax laws where declaratory relief (or other state remedy) is available, citing *National Private Truck Council, Inc. v. Oklahoma Tax Com'n*, 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995).

11. Because we find no constitutional violation in the statute at issue, we do not address PPROA's claim on appeal that jurisdiction was proper under 68 O.S.2001 § 226 and 42 U.S.C. § 1983 in addition to 12 O.S.2001 § 1651. The only difference in the remedy available under § 226 and § 1983 as opposed to § 1651 is the availability of an award of attorney fees to PPROA if it had prevailed.

*Vance v. Fed. Natl. Mortg. Assn.,* 1999 OK 73, 988 P.2d 1275. Here, the parties do not dispute the material facts.[12] They dispute the legal question of whether the statute in question is constitutional. We review questions of law *de novo.*

¶ 8 A legislative act is presumed to be constitutional and will be upheld unless it is "clearly, palpably and plainly inconsistent with the Constitution." *Reherman v. Oklahoma Water Resources Bd.,* 1984 OK 12, 679 P.2d 1296, 1300. Whenever possible, statutes should be construed so as to uphold their constitutionality. *Id.* We do not look to the Constitution to determine whether the legislature is authorized to do an act, but rather to see whether the act is prohibited. *Draper v. State,* 1980 OK 117, ¶ 10, 621 P.2d 1142, 1146. The party challenging the constitutionality of a statute has the burden of proof and every presumption is to be indulged in favor of constitutionality. *Fent v. Oklahoma Capitol Improvement Auth.,* 1999 OK 64, 984 P.2d 200. The Legislature has plenary power to tax, subject only to constitutional restrictions and the will of the people expressed through elections. *In re Oneok Field Services Gathering, LLC,* 2001 OK 116, ¶ 8, 38 P.3d 900, 903. The United States Supreme Court has noted that "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." *Austin v. New Hampshire,* 420 U.S. 656, 661, 95 S.Ct. 1191, 1195, 43 L.Ed.2d 530 (1975), quoting *Madden v. Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940).

¶ 9 A recent decision by another division of this court reveals the likely impetus for the enactment of § 2385.26. *In re Income Tax Protest of Alani,* 2006 OK CIV APP 54, 135 P.3d 828, involved a nonresident's protest of the assessment of income taxes on royalties paid for oil and gas produced in Oklahoma. In that case, OTC sent the nonresident a letter, in 1995, informing him he was re-

quired to file an Oklahoma tax return and pay income taxes on royalties he had received.[13] In its letter, OTC noted it had authority, pursuant to 69 O.S.1991 § 2369(D) "to order *all production payments withheld*" in the case of a person who has not filed a return or paid state income taxes. (Emphasis added). The nonresident filed a protest in which he admitted he received royalty income from Oklahoma production, but denied OTC had any right to assess or collect income tax from him as a nonresident. In an administrative hearing, OTC ruled against the nonresident and he sought review in this court.

¶ 10 The appellate court noted it had been settled since 1920 that a nonresident who earns income in Oklahoma must pay Oklahoma income tax. *Id.* at ¶ 9, citing *Shaffer v. Carter,* 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445 (1920). Additionally, the Oklahoma Tax Code imposes a tax on income of nonresidents attributable to ownership of real or tangible personal property in Oklahoma. 68 O.S.2001 § 2362(1)(a). *Id.* at ¶ 8. The court concluded that OTC had jurisdiction to assess and collect a tax on royalty income attributable to property within Oklahoma, regardless of the place of residence of the royalty owner. *Id.* at ¶ 21.

¶ 11 The *Alani* decision illustrates that prior to the passage of § 2385.26, if a nonresident failed to pay income taxes on royalty payments, OTC had the option to order withholding the entire royalty payment to compel payment of taxes. That statute, § 2369(D), applies regardless of residency and remains effective. The withholding provision in § 2385.26 avoids that extreme remedy, however, by ordering the taxes withheld before payment of royalties to nonresidents. PPROA takes from *Alani* that withholding is unnecessary because *Alani* established that OTC had jurisdiction to pursue nonresidents for unpaid taxes. We find *Alani* instead shows the efficiency of collecting the taxes from nonresidents through withholding,

---

**12.** Although the parties have each consented to the other's statement of undisputed facts for purposes of summary judgment, both parties have reserved the right to conduct discovery to determine factual disputes in the event this case is remanded for trial.

**13.** This fact pattern contradicts OTC's assertion, made at oral argument, that it has no knowledge of out of state royalty owners and that, absent the withholding statute, it would have to audit operators to determine the identity of nonresidents owing taxes on royalties.

which avoids the expense, burden, and delay of litigation.

¶ 12 PPROA asserts the statute discriminates in two ways: first, by depriving non-residents of the time value of money between the time the taxes are withheld and the receipt of any refund, and second, by requiring nonresidents to file tax returns to claim refunds of overpaid withholding, while Oklahoma residents with low incomes are not required to file returns. PPROA contends the withholding statute violates the Privileges and Immunities Clause and the Equal Protection Clause because the statute denies non-resident royalty owners the same freedom to enjoy their property as Oklahoma residents enjoy. PPROA's argument is that by withholding income taxes from royalties paid to non-residents while allowing Oklahoma residents to pay those taxes at the time of filing their returns allows the Oklahoma resident royalty owners to enjoy the use of the tax money (primarily to earn interest on it) while non-residents are deprived from using those tax dollars to their advantage before the tax return due date.

¶ 13 PPROA further claims that the withholding statute may allow Oklahoma resident royalty owners with lower incomes avoid paying the taxes on their royalties, while non-residents necessarily pay the taxes on their royalties because the taxes are withheld. PPROA notes the Oklahoma Tax Code requires residents with more than $16,400 gross income (for married couples filing jointly) to file a tax return, while non-residents must file returns if they have only $1,000 in income. PPROA contends that requiring non-residents to file returns at lower income levels adds to the burden placed on non-residents by the withholding statute.[14]

¶ 14 PPROA asserts that virtually all nonresident royalty interest owners face the burden of filing tax returns—either to claim a refund of excess withholding or because they have as little as $1,000 in Oklahoma gross income. PPROA contrasts this burden with the situation of resident royalty owners who have not had taxes withheld and who may have less than $16,400 in gross income and therefore not have to file returns nor seek refunds of withheld royalty taxes. At oral argument in this case, PPROA announced its view that the statute should be amended to require taxes on royalties to be withheld from payments to all interest owners, regardless of residence. This statement suggests that the burden of filing returns to claim refunded taxes is not a significant hindrance.

¶ 15 An Oklahoma Attorney General's Opinion has previously addressed the constitutionality of the group of statutes at issue here.[15] As noted above, a tax on oil and gas income produced in Oklahoma is constitutional. *Alani, supra; Shaffer, supra.*[16] The Attorney General's Opinion determined that the withholding statute was constitutional based on the holding of *Travis v. Yale & Towne Mfg. Co.,* 252 U.S. 60, 40 S.Ct. 228, 64 L.Ed. 460 (1920).

¶ 16 In *Travis,* the United States Supreme Court approved a New York statute which directed employers to withhold income taxes from the wages of employees who worked in New York but lived outside the state. At that time New York did not have a similar withholding statute affecting the wages of its residents. The court did not address the application of the Commerce Clause because that claim had been abandoned in the certiorari proceedings,[17] but the court found the statute was constitutionally sound under both

14. PPROA has not claimed that 68 O.S.2001 § 2368, which sets a lower income threshold for requiring nonresidents to file Oklahoma tax returns than the income threshold for residents, is unconstitutional.

15. That opinion, 2000 OK AG 62, concluded that § 2385.26 does not violate the Privileges and Immunities Clause or the Equal Protection Clause. It did not address the Commerce Clause. Attorney General opinions are persuasive authority. *National Cowboy Hall of Fame &*

*Western Heritage Ctr. v. State ex rel. Ok. Human Rights 'Comm.,* 1978 OK 76, 579 P.2d 1276; *McMullan v. County Bd. of Tax Roll Corrs.,* 2005 OK CIV APP 61, 119 P.3d 781.

16. The tax on oil and gas royalties is based on the situs of the producing property, and not on the place of residence of the interest owner. 68 O.S.2001 § 2358(A)(4)(a).

17. 252 U.S. at 76, 40 S.Ct. 228.

the Privileges and Immunities Clause and the Equal Protection Clause.

¶ 17 In *Travis*, the court noted its holding in *Shaffer*, issued the same day, which approved states taxing nonresidents for income earned in the taxing state. 252 U.S. at 75, 40 S.Ct. 228. The court noted that taxes generally were collectible through garnishment or withholding. As to withholding taxes only from nonresident earners, the court found no actual discrimination because the tax owed was the same for residents and nonresidents, regardless of the collection method. *Id.* at 76, 40 S.Ct. 228. In *Shaffer* the court approved charging nonresidents a tax "of like character and not more onerous in effect" than taxes charged to residents for income earned in the taxing state. The *Travis* court concluded the only difference in requiring withholding as to certain taxpayers was in the method of collecting the equal tax.[18]

¶ 18 The *Travis* court held that the withholding statute at issue did not "increase the burden of the tax upon nonresidents, but merely recognize(d) the fact that as to them the state imposes no personal liability, and hence adopt(ed) a convenient substitute for it." 252 U.S. at 76, 40 S.Ct. at 230. The court indicated that the state had adopted a reasonable method to ensure collection of income taxes from nonresidents, and concluded that a statute employing a different collection method for nonresidents, but which does not tax nonresidents at a different rate than residents, does not violate the Equal Protection or Privileges and Immunities Clauses.

¶ 19 Since *Travis*, the Supreme Court has further addressed state tax regulations classifying on the basis of residency under the Privileges and Immunities Clause. In *Lunding v. New York Tax Appeals Tribunal*, 522 U.S. 287, 118 S.Ct. 766, 139 L.Ed.2d 717 (1998), nonresident taxpayers challenged the constitutionality of a New York statute which allowed state residents to claim an income tax deduction for alimony paid, but denied that deduction to nonresidents. In *Lunding*, the court reiterated the *Shaffer* holding that nonresidents may be required to pay taxes "not more onerous in effect" than those imposed on state residents in the same circumstances, but the court held that nevertheless, "as a practical matter, the Privileges and Immunities Clause affords no assurance of precise equality in taxation between residents and nonresidents of a particular (s)tate." 522 U.S. at 297, 118 S.Ct. 766. The court recognized that different treatment of

---

**18.** That withholding is not a tax, but a method of collection has been reaffirmed since *Travis*. In *Baral v. U.S.*, 528 U.S. 431, 120 S.Ct. 1006, 145 L.Ed.2d 949 (2000) (a case not directly involving the issue of tax withholding), the Supreme Court referred to withholding as "garden variety collection of income tax," 528 U.S. at 433, 120 S.Ct. at 1007, and further explained "withholding and estimated tax remittances are not taxes in their own right, but methods for collecting the income tax." 528 U.S. at 436, 120 S.Ct. at 1009. The court noted that the Internal Revenue Code section at issue there referred to withheld taxes and estimated tax payments both as prepaid income taxes. 528 U.S. at 437, 120 S.Ct. at 1010, citing 26 U.S.C. § 6513. Much earlier, the Supreme Court had announced that "it is of the utmost importance to all of them [the states] that *the modes adopted to enforce the taxes levied* should be interfered with as little as possible." *Dows v. Chicago*, 78 U.S. 108, 11 Wall. 108, 20 L.Ed. 65 (1871) (Emphasis added) (Decision holding that equity will not enjoin tax collection efforts where remedy at law is available).

The 9th Circuit Court of Appeals has explained the utility of collecting taxes by withholding the taxes before receipt by the taxpayer:

The withholding provisions here are merely a collection adjunct of an otherwise valid tax.

We think no objective of Congress, whether evidenced by the express language of the statutes relating to seamen's wages, or implied from its occupation of this field of legislation, can be said to run counter to the policy which would recognize the taxing power of the Territory.

Admittedly these collection provisions work some hardship and produce annoyances. No one has yet devised a painless method of tax collection. The withholding device, though of but recent contrivance for use in collecting from wage earners, is so efficient for this purpose as to have become an essential aspect of any modern income tax law. When Congress, as we have said, occupied the field of legislation relating to the protection of seamen in the collection of their wages, it was not then entering any field relating to the liability of seamen for taxes, or the means of collecting such taxes. We deal here with a different field than that covered by the Congressional enactments. The payment of taxes is not included in those things from which Congress undertook to protect the seaman.

*Alaska SS Co. v. Mullaney*, 12 Alaska 594, 180 F.2d 805 (9thCir.1950).

residents and nonresidents in state tax laws are judged by their practical effect, rather than by their form. *Id.* The court explained that in response to a challenge to a state tax law which treats residents and nonresidents differently, the state must show first, a "substantial reason" for the difference in treatment, and second, that the different treatment bears a "substantial relationship" to the stated objective. *Id.* at 298, 118 S.Ct. 766 citing *Supreme Court of N.H. v. Piper,* 470 U.S. 274, 284, 105 S.Ct. 1272, 1278, 84 L.Ed.2d 205 (1985).

■ ¶ 20 In this case, OTC's stated reason for the different treatment is that it is easier to secure payment of taxes on royalties paid to out of state interest owners by withholding the taxes before the income leaves the state. PPROA's response is that OTC has jurisdiction over nonresident royalty owners so that withholding is unnecessary; PPROA also asserts that OTC is able to secure payment by imposing liens against nonresidents' property. The *Alani* decision, discussed above, shows the litigation necessary to secure payment from nonresidents who fail to file Oklahoma returns. Avoidance of that burden and expense is a substantial reason for the different treatment; directing operators to withhold the taxes before the royalties leave the state necessarily bears a substantial relationship to the state's objective. The fact that the statute at issue satisfies the test enunciated in *Lunding,* along with the fact that the statute does not involve unequal taxing, but rather only a difference in collection method (a long-approved difference), leads to our conclusion that § 2385.26 does not violate to Privileges and Immunities Clause as a matter of law.

■ ¶ 21 In its Equal Protection claim, PPROA notes the Supreme Court requires a state to show a rational basis for classifying on the basis of residency, and that such a classification must be reasonable, not arbitrary, and must rest on a ground that has a fair and substantial relation to the goal of the statute, citing *U.S. Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). In reviewing a classification for a rational basis, a legislative choice may be based on rational speculation unsupported by evidence. *Schutz v. Thorne,* 415 F.3d 1128, 1136 (10th Cir.2005), citing *FCC v. Beach Comm.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). PPROA argues that OTC has offered *no* rational basis for its different treatment of non-residents under § 2385.26. PPROA acknowledges, however, that OTC's stated rationale for the withholding statute is to ensure taxes on the royalty income are collected before the income leaves the state. PPROA again argues this asserted purpose is without merit because OTC is able to file liens or suits to recover unpaid taxes. We find the State's interest in collecting taxes on royalty income before the income leaves Oklahoma provides a rational basis for the classification based on residence in § 2385.26. The statute does not violate the Equal Protection Clause as a matter of law.

■ ¶ 22 PPROA's remaining claim is that § 2385.26 burdens interstate commerce. PPROA asserts that the "dormant commerce clause" [19] bars states from passing laws which interfere with interstate commerce. "(A) state tax that favors in-state business over out-of-state business for no other reason than the location of its business is prohibited by the Commerce Clause." *American Trucking Associations, Inc. v. Scheiner,* 483 U.S. 266, 285, 107 S.Ct. 2829, 2841, 97 L.Ed.2d 226 (1987). PPROA claims that a law overtly blocking interstate commerce at the state's borders is almost *per se* invalid and invokes the strictest scrutiny, citing *Dorrance v. McCarthy,* 957 F.2d 761 (10th Cir.(Wyo.)1992).

¶ 23 In *Dorrance,* the Tenth Circuit Court of Appeals explained the analysis used to determine whether a state statute violates the dormant Commerce Clause:

19. The Commerce Clause is the source of constitutional limits on the states' ability to engage in economic protectionism through regulation and taxation of interstate commerce; this implied restriction on *state* regulation of interstate commerce is known as the negative or "dormant commerce clause." *Mt. Hood Beverage Co. v. Constellation Brands, Inc.,* 149 Wash.2d 98, 63 P.3d 779 (2003).

Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. The person challenging a statute that regulates evenhandedly bears the burden of showing that the incidental burden on interstate commerce is excessive compared to the local interest.

By contrast, if a statute discriminates against interstate commerce either on its face or in its practical effect, it is subject to the strictest scrutiny, and the burden shifts to the governmental body to prove both the legitimacy of the purported local interest and the lack of alternative means to further the local interest with less impact on interstate commerce. Thus, where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected.

957 F.2d at 763. (Citations omitted). See also *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

¶ 24 In *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), the Supreme Court outlined the history of its interpretation of the dormant Commerce Clause's limitations on the states' power to tax. The court noted that its jurisprudence had evolved to a four pronged test, such that

it would sustain a state tax against a Commerce Clause challenge if the tax (1) is applied to an activity with a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to services provided by the state. 504 U.S. at 311, 112 S.Ct. 1904.

¶ 25 The statute at issue in this case does not discriminate on its face because, although it directs withholding only as to nonresidents, it also grants nonresidents the right to a credit or refund of any amount withheld that exceeds the taxes due. And, the burden on interstate commerce caused by a particular tax collection method is only incidental, particularly where many state residents must pay quarterly tax estimates and the taxes withheld from nonresidents are paid quarterly.[20] Therefore under *Dorrance*, we would look to whether the burden on commerce caused by withholding the tax is clearly excessive in relation to the local interest at stake.

¶ 26 However, the essential distinction between *Dorrance* and *Quill* (and other cases involving state tax laws challenged on Commerce Clause grounds) is that the statute PPROA challenges *does not impose a tax,* but instead directs a method of collecting a tax. PPROA has not challenged the tax to which the withholding statute applies, which as noted above applies equally to residents and nonresidents alike. Indeed, at oral argument, PPROA conceded it had not found any cases addressing a tax withholding statute in the context of a Commerce Clause violation, nor have we found such a case.[21] Additionally, we have reviewed numerous statutes from

**20.** The Oklahoma Tax Code provides, with exceptions, that if a taxpayer's tax liability is reasonably expected to be at least $500 more than the amount withheld from the taxpayer's wages, the taxpayer must make quarterly estimated tax payments. 68 O.S.2001 § 2385.7; 68 O.S.2001 § 2385.9.

**21.** In *Austin v. New Hampshire*, 420 U.S. 656, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975), a case involving a constitutional challenge to New Hampshire's commuter tax, the court noted that New Hampshire law required the tax at issue to be withheld from the wages of nonresidents who commuted into New Hampshire for work. In

footnote 4, the court recognized that *withholding in an amount greater than the current tax rate* deprived nonresidents of the use value of the excess withholding. The court determined only that such loss established the nonresidents' status as parties adversely affected for standing purposes. The court did not address the issue of whether the withholding provision was unconstitutional. In that case, the challenge was to the tax, not to the collection method. The withholding amount in § 2385.26 has been amended to be less than the maximum tax rate, so that excess withholding of taxes on royalty income is not a significant factor in this case.

other states which require withholding taxes from nonresidents in various types of transactions and found no cases addressing the constitutionality of those statutes.

¶27 Statutes requiring withholding of taxes from certain groups, including nonresidents of the taxing state, have long been upheld so long as the tax itself is not more onerous than that applicable to those not subject to withholding. That withholding may result in the temporary loss of use of the withheld amounts has not been found to be a constitutionally protected interest (at least so long as the amount withheld is not greater than the tax rates, as suggested by *Austin, supra*). OTC has enunciated a legitimate local purpose for the classification in § 2385.26, and neither PPROA nor Cambridge has shown that the burden on interstate commerce is more than incidental; certainly nothing in the record suggests the burden is clearly excessive compared to the local interest. For these reasons, we find the statute at issue here does not violate the Commerce Clause as a matter of law. And, as noted above, it likewise does not offend the Equal Protection Clause or the Privileges and Immunities Clause. OTC is entitled to judgment as a matter of law on the undisputed material facts.

AFFIRMED

HANSEN, P.J., and BELL, J., concur.