OSCN Found Document:TRENTHAM v. ISAACS

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 TRENTHAM v. ISAACS
2014 OK CIV APP 35
Case Number: 111754
Decided: 12/19/2013
Mandate Issued: 04/10/2014
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2014 OK CIV APP 35, __ P.3d __

RONALD TRENTHAM, Plaintiff/Appellant,
v.
NORMAN ISAACS, ALEX MINK, and DEAN THOMAS, Defendants/Appellees,
and
STILWELL AREA DEVELOPMENT AUTHORITY, Intervenor/Appellee.

APPEAL FROM THE DISTRICT COURT OF
ADAIR COUNTY, OKLAHOMA

HONORABLE THOMAS H. ALFORD, JUDGE

AFFIRMED

Barry K. Roberts, Norman, Oklahoma, for Plaintiff/Appellant,
Ronald D. Cates, Tulsa, Oklahoma, for Defendant/Appellee Alex Mink and Intervenor/Appellee, and Lloyd E. Cole, Stilwell, Oklahoma, for Intervenor/Appellee.

Kenneth L. Buettner, Presiding Judge:

¶1 Plaintiff/Appellant Ronald Trentham (Mayor) challenged actions taken by three members of the Stilwell City Council, Defendants/Appellees Norman Isaacs, Alex Mink, and Dean Thomas (collectively, "Council Members") and sought judgment declaring the parties' rights under a city charter. Stilwell is a home rule charter city governed by a mayor and a five-member city council; the dispute here is between Mayor and a majority of the council over their respective powers. The record shows no dispute of material fact. The issues of law presented are who may appoint the city attorney and members of the utility board, and whether the mayor may veto ordinances passed by the council. The Stilwell city council violated an ordinance which authorized Mayor to appoint the city attorney, but the city council later repealed that ordinance, which resulted in the council having authority to name the city attorney. Mayor purported to veto the repealing ordinance, but the city charter includes a list of the mayor's powers, which list does not include veto authority, and the charter prevails over a statute affording a veto power to mayors of non-charter cities. Following the repeal, appointing a city attorney was the task of the council. The council also violated the charter in purporting to appoint a member to the utility board. Stilwell's charter provides for the mayor, with the council's approval, to appoint members to the utility board and where there is a vacancy, the charter provides for the remaining utility board members to recommend a new member with approval of the council. On de novo review of the questions of law presented, we affirm summary judgment.

¶2 In Mayor's August 8, 2011 Petition, he alleged Council Members violated the city charter, Ordinance 183, and state law by making or attempting to make appointments that were reserved to Mayor. Mayor sought an injunction prohibiting Council Members from violating the charter and state law, as well as an order vacating or invalidating the appointments made by Council Members.

¶3 Council Members responded that a different section of the charter gave them the authority to select officers and employees of the City. They contended that under Oklahoma law, a city charter trumps ordinances which are inconsistent with the charter and that therefore the ordinance cited by Mayor was not controlling.

¶4 Mink filed an Answer and Counterclaim, in which he admitted Mayor's allegations, but denied Council Members' actions violated the charter, City's ordinances, or state law. In his counterclaim, Mink sought a judgment declaring the powers of Mayor and Council Members.

¶5 The trial court entered an order October 20, 2011 denying Council Members' motion to dismiss (that motion is not part of the record on appeal) and granting a temporary injunction to Mayor. The court found that Council Members' appointment of a city attorney violated Ordinance 183 and enjoined Council Members from further acting in violation of that ordinance.

¶6 Mayor filed his Amended Petition December 13, 2011. He alleged Council Members again violated the city charter by refusing to confirm Mayor's appointment to the Municipal Utilities Board and by attempting to appoint a person to that board without Mayor's involvement, then later appointing a person to that board in violation of the temporary injunction. Finally, Mayor alleged Council Members had passed an ordinance repealing Ordinance 183, which Mayor contended violated state law. Mayor sought a judgment declaring the rights of the parties and the applicability of various ordinances and laws.

¶7 The Stilwell Area Development Authority (Authority) intervened January 27, 2012, asserting it was a public trust and had an interest in the determination of the authority and procedure for appointing members to Authority.

¶8 Mayor filed his Motion for Summary Judgment April 17, 2012. Mayor asserted ten undisputed facts supported judgment in his favor.[1] Mayor asserted four issues remained to be decided by the trial court: whether Council Members violated Ordinance 183 and the charter in naming Lloyd Cole as city attorney, whether Council Members violated the charter in appointing Morton to the Utility Board; whether Mayor had the authority to veto ordinances adopted by Council Members, and whether Council Members had authority to employ a city attorney not appointed by Mayor.

¶9 Authority responded to Mayor's summary judgment motion May 24, 2012. Authority did not dispute Mayor's statements of fact. It alleged an additional undisputed fact was that Mayor was recognizing a former city attorney whose contract had expired as the current city attorney. Authority asserted that Ordinance 183 required the concurrence of the mayor and city council on the appointment of a city attorney, and noted Council Members had not approved any city attorney candidates other than Lloyd Cole. Mink filed a Motion for Summary Judgment, without argument, and a response to Mayor's Motion for Summary Judgment, in which he stipulated there was no dispute to Mayor's statements of fact.

¶10 Isaacs and Thomas filed their own Motion for Summary Judgment, in which they admitted Mayor's statements of fact 1-9. They listed four additional statements of undisputed facts: 1) Mayor failed to make an appointment to the utility board prior to June 1, 2011; 2) Neil Morton's term on the utility board expired June 1, 2011, resulting in a vacancy on the board; 3) Authority recommended re-appointing Morton to fill the vacant seat; and 4) Mayor attempted to veto Council Members' repeal of Ordinance 183. Isaacs and Thompson posited three issues of law presented by the undisputed facts: 1) whether Section 36 of the city charter controls the selection and appointment of a city attorney (resulting in Ordinance 183 being void); 2) whether the mayor may veto an act of the city council; and 3) whether Morton was properly appointed and confirmed to the utility board.

¶11 Mayor filed a response in which he admitted the first, third and fourth facts asserted by Isaacs and Thompson, and asserted the second was a legal conclusion, which Mayor denied.

¶12 Following a hearing held August 17, 2012, the trial court filed its Journal Entry of Judgment March 21, 2013. The trial court found that Ordinance 183 authorized the mayor to appoint the city attorney and was a valid ordinance at the time Council Members purported to appoint Cole as city attorney July 5, 2011, and that such act violated the ordinance and was invalid. The trial court noted that Stilwell operates under a charter form of municipal government and its charter does not include a provision allowing the mayor to veto a duly enacted ordinance. The court concluded that Mayor does not have authority to veto an ordinance. The court noted the charter also provides that all officers and employees, other than elected officials and except as otherwise specifically provided, shall be appointed by and serve at the pleasure of the council. The court held that after the council repealed Ordinance 183, the charter included no reference to a city attorney, and therefore pursuant to the charter, the council had the authority to appoint a city attorney without prior appointment by Mayor.

¶13 The court also noted that the city charter provides for the mayor to make appointments to the utility board, with confirmation by the council, and that when Morton's term expired it was Mayor's responsibility to name a successor. The court found that the charter also provides that vacancies in offices are to be filled by the council. The court noted the general rule that a public officer holds his position until a successor is named, so there was no vacancy on the board. The court found that the council's purported appointment to the board was therefore invalid. The court held that Morton remained in his position on the board until a successor is confirmed by the procedure established in the charter.

¶14 Mayor appeals the declaratory judgment. The material facts are undisputed; the issues presented are questions of law, which we review de novo. Panhandle Producers & Royalty Owners Ass'n v. Oklahoma Tax Com'n, 2007 OK CIV APP 68, ¶7, 162 P.3d 960. The legal questions presented by these facts are whether Mayor has authority to veto an ordinance, whether Mayor or the council may appoint a city attorney, and which party may name a member of the utility board and whether there was a vacancy on that board when the council did not approve Mayor's appointment.

¶15 We address the veto question first. There is no dispute that Ordinance 183 provided for Stilwell to have a city attorney and directed that the city attorney would be appointed by the mayor with the consent of the governing body. There is also no dispute that after Mayor and Council Members disagreed on the city attorney appointment, the council voted to approve an ordinance repealing Ordinance 183. Mayor signed the repealing ordinance, but he marked through the word "passed" and wrote "veto" above it. The effect of the repeal of Ordinance 183 would be that the council would select and appoint the city attorney. Stilwell Charter, Art. IX, §36.

¶16 Mayor contends Stilwell has an aldermanic form of government, and he notes that in the Oklahoma Municipal Code, the powers and duties of a mayor of an aldermanic city include the power to veto ordinances.[2] While Stilwell's government is similar to the statutory aldermanic form, the key distinction is that Stilwell has a charter. In Oklahoma, municipalities are divided into two categories: charter and non-charter (or statutory) municipalities. Section 9-106 applies to statutory municipalities.

A 'statutory' municipality is one organized and governed in accordance with the provisions of 11 O.S. 9-101 through 11 O.S. 9-118 (1981) (aldermanic); 11 O.S. 10-101 through 11 O.S. 10-121 (council-manager); 11 O.S. 11-101 through 11 O.S. 11-125 (strong mayor-council); or 11 O.S. 12-101 through 11 O.S. 12-114 (town board of trustees).

A 'statutory' municipality has no inherent power or authority. It possesses and can exercise only those powers expressly granted, or incidental to powers expressly granted, by the state. . . .

In Morehead v. Dyer, 1973 OK 121, 518 P.2d 1105, the Court held that a 'statutory' city had no power to hold recall elections because no constitutional or statutory provision authorized such recall elections. . . .

The power of non-charter i.e. 'statutory' municipalities are such as are expressly granted or necessarily implied from a statute.

19 Okl. Op. Atty. Gen. 215, Okl. A.G. Opin. No. 87-112 (citations partly omitted).[3]

As a charter city, Stilwell is governed by its charter, which acts as its constitution.

A 'charter' municipality is a municipality which has adopted a charter in accordance with Okla. Const. Article XVIII , Section 3(a) and the laws of Oklahoma and, at the time of adoption of the charter, had a population of 2,000 inhabitants or more. . . .

It is well established that 'a city charter which is adopted and approved in accordance with the Constitution Okla. Const. Article XVIII, Section 3(a) and which is not inconsistent therewith becomes the organic law of the city and supersedes all laws of the state in conflict therewith insofar as such laws relate to merely municipal matters.' . . . .

If the exercise of municipal power conflicts with state law, the conflict is resolved by determining whether the exercise of municipal power pertains to purely municipal affairs. . . .

Id. (citations omitted).

¶17 Article VI, Section 76 of Stilwell's charter establishes the mayor's powers and duties.[4] Mayor acknowledges that where a charter and state law conflict, the charter will prevail on matters of purely municipal concern. Mayor contends there is no conflict; instead, he urges § 76 is silent on the question of a veto power and that we must therefore look to state law, specifically § 9-106 to determine whether a mayor has authority to veto ordinances. Mayor contends § 9-106 supplements the allegedly silent charter. For this argument, Mayor relies on Development Industries, Inc. v. City of Norman, 1966 OK 59, 412 P.2d 953, in which the Oklahoma Supreme Court stated "it should be noted that while the City of Norman has a charter, the same is silent insofar as authorizing the City Commission to enact zoning ordinances. The City Charter not expressly providing for zoning ordinances, the power to enact such ordinances is derived from legislative enactments." Id. at 955. Mayor also relies on City of Muskogee v. Senter, 1939 OK 375, 96 P.2d 534, 186 Okla. 174, in which the charter stated the mayor "shall sign all contracts, bonds, or other instruments requiring assent of the City and take care that the same are duly performed." There the mayor signed a contract for an architect's services without approval by the city counsel. The architect urged that the charter allowed the mayor to bind the city unilaterally. The Oklahoma Supreme Court disagreed, noting that state law provided that a mayor could not bind a city to a contract without the approval of the council.

¶18 We are not persuaded that either of these cases support a finding that the mayor of Stilwell has a veto power. We disagree that the charter is silent on this question because the charter expressly states the mayor's rights and duties--particularly that the mayor "shall see to the faithful execution of all laws and ordinances" and that the mayor shall not have a vote (unless there is a tie). Whether a mayor may veto ordinances is a matter of local concern; to the extent there is a conflict, the local charter prevails. We find Mayor's powers and duties are limited to those acts expressed in the charter. There is no indication that the charter's provision for repealing an ordinance was not followed in this case. Accordingly, Mayor's duty is to see to the faithful execution of the repealing ordinance.

¶19 Following the repeal of Ordinance 183, the authority to appoint a city attorney was found in §36 of the charter. That section provides:

All officers and employees of the City of Stilwell, other than elective officers and except as hereinafter specifically provided, shall be selected and appointed by the Council. Their term of office, conditions of servitude, and compensation shall be fixed by the Council and they shall hold office during the pleasure of the Council.

This charter provision authorizes the council to name a city attorney. At the time Council Members purported to appoint a city attorney in July 2011, Ordinance 183 remained in effect and Council Members violated that provision then. After the repealing ordinance was passed by a majority of the council, the council was free to name a city attorney under §36.

¶20 Lastly we consider the parties' dispute over appointments to the utility board. Article IX, Section 99 of the Charter creates a "municipal utility board which shall consist of five members possessing the same qualifications as members of the City Council and who shall be appointed by the mayor with the confirmation of the Council." Section 100 of the charter provides that members of the utility board shall be appointed on the 1st day of June or the first Monday thereafter. Council Members argue that because Mayor did not name a successor to fill the expiring seat of Neil Morton by June 1, 2011, the seat became vacant. Council Members assert they rightly named a successor under Section 103 of the charter, which states:

Vacancies in the membership of said Utility Board by reason of death, resignation, removal or any other cause, shall be filled by the recommendation of the remaining Board members of the Utility Board and the approval of the City Council, and said appointee shall serve during the unexpired term . . . , of such appointments.

Council Members alternatively contend that if there was no vacancy due to Mayor's failure to make an appointment by June 1, then Morton was held over in the office. We disagree with Council Members and the trial court that Section 103 allows the council to name a person to fill a vacancy on the utility board. That section provides that the remaining board members recommend a new member subject to the council's approval. Nevertheless, we agree that there was no vacancy simply because a successor was not named by June 1. We agree with the trial court's reliance on the general rule that a person whose term is expiring holds over until his successor has been duly appointed under the terms of the charter. See Okla. Const. Art. 6, §12; 51 O.S.2011 § 15 ("Every appointed officer shall hold his office until the end of the term for which the officer whom he succeeds was elected or appointed, and until his successor is elected and qualified."). Were we to adopt Council Members' argument, they could subvert the charter's intended method of selecting utility board members simply by rejecting the mayor's nominees until after June 1. Council members violated the charter in purporting to appoint Morton to the utility board. We agree with the trial court that Morton remains in his position until a successor is named by Mayor and approved by the council, as directed by the charter. AFFIRMED.

JOPLIN, C.J., and BELL, J., concur.

FOOTNOTES

[1] Mayor asserted there was no dispute that: 1) he was the mayor of Stilwell; 2) Isaacs, Mink, and Thomas were members of the Stilwell City Council; 3) Stilwell adopted a City Charter October 29, 1946; 4) Stilwell adopted Ordinance 183 on June 4, 1987, which provided for the mayor to appoint a city attorney; 5) Council Members named Lloyd Cole as city attorney July 5, 2011, without Mayor's prior appointment; 6) Mayor appointed Bill Garrett to the Stilwell Municipal Utility Board June 21, 2011, and Council Members rejected the appointment; 7) Mayor withdrew the appointment of Garrett and appointed Ross Roye to the Stilwell Municipal Utility Board November 4, 2011; 8) Council Members rejected the appointment of Roye November 7, 2011, and appointed W. Neil Morton to the Utility Board without him first being appointed by Mayor; 9) Council Members voted to repeal Ordinance 183 November 7, 2011; and 10) Mayor vetoed the repeal of Ordinance 183 and gave Council Members notice of the veto November 14, 2011.

[2] 11 O.S.2011 §9-106 provides:

The mayor may sign or veto any city ordinance or resolution passed by the city council. Any ordinance or resolution vetoed by the mayor may be passed over his veto by a vote of two-thirds () of all the members of the council. If the mayor neglects or refuses to sign any ordinance or return it with his objections in writing at the next regular meeting of the council, the ordinance shall become law without his signature.

[3] Attorney General opinions are persuasive authority. National Cowboy Hall of Fame & Western Heritage Ctr. v. State ex rel. Okla. Human Rights Comm., 1978 OK 76, 579 P.2d 1276.

[4] That section provides:

(A) The Mayor shall sign all contracts, bonds, or other instruments requiring the assent of the City and take care that the same are duly performed.
(B) The Mayor shall call all special municipal elections as in this Charter or the laws of the State provides.
(C) He shall perform such other duties not inconsistent with the purposes and provisions of the Charter, as the Council may assign to him.
(D) He shall be the chief administrative officer of the city and shall have charge and supervision of all branches of the City service except as otherwise provided in this Charter.
(E) He shall see to the faithful execution of all laws and ordinances of the City and State.
(F) He shall have power to dismiss any officer or employee appointed by him whenever in his judgment the interests of the City service so requires, except as herein provided.
(G) He shall control and direct the several officers and departments of the City administration except as hereinafter provided.
(H) He shall have power at any time to investigate the affairs of any department. He or any persons appointed by him for the purpose shall have the power to compel the attendance of witnesses and production of books, papers, and other evidence.
(I) He shall attend all meetings of the Council and may take part in the discussions but shall not vote except in case of a tie when he may cast the deciding vote.
(J) He shall keep the Council advised of all the needs of the City and shall recommend measures for its adoption.
(K) He shall perform all such other duties as may be imposed on him by this Charter or by ordinance.






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2007 OK CIV APP 68, 162 P.3d 960, PANHANDLE PRODUCERS v. OKLAHOMA TAX COMMISSION
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1939 OK 375, 96 P.2d 534, 186 Okla. 174, CITY OF MUSKOGEE v. SENTER
Discussed at Length 1966 OK 59, 412 P.2d 953, DEVELOPMENT INDUSTRIES, INC. v. CITY OF NORMAN
Discussed 1973 OK 121, 518 P.2d 1105, MOREHEAD v. DYER
Discussed 1978 OK 76, 579 P.2d 1276, NATIONAL COWBOY HALL OF FAME v. STATE ex rel. OKLA. HUMAN RIGHTS COMM.
Discussed
Title 11. Cities and Towns Cite
Name
Level 11 O.S. 9-106, Mayor - Signing Ordinances - Veto Power
Cited
Title 51. Officers Cite
Name
Level 51 O.S. 15, Term of Appointed Officer
Cited